U.S. Court of Appeals No. 23-3189

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JULIAN VARGAS, individually on behalf of himself and all others similarly situated and AMERICAN COUNCIL OF THE BLIND, INC.,

*Plaintiffs and Appellees,*

vs.

QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., and QUEST DIAGNOSTICS INCORPORATED, and DOES 1-10, inclusive,

*Defendants and Appellants.*

## ADDENDUM TO APPELLANTS' OPENING BRIEF

Appeal from an Order of the United States District Court
for the Central District of California
Case No. 2:19-cv-08108 DMG (MRWx)
The Honorable Dolly M. Gee, Judge Presiding

DAVID RAIZMAN, CA Bar No. 129407
david.raizman@ogletree.com
AMBER L. ROLLER, CA Bar No. 273354
amber.roller@ogletree.com
J. NICHOLAS MARFORI, CA Bar No. 311765
nicholas.marfori@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, California  90071
Telephone: 213-239-9800
Facsimile:  213-239-9045

**[Additional Attorneys Listed on Next Page]**

MARK S. SIDOTI
msidoti@gibbonslaw.com
MICHAEL R. McDONALD
mmcdonald@gibbonslaw.com
DANIEL S. WEINBERGER
dweinberger@gibbonslaw.com
GIBBONS P.C.
One Pennsylvania Plaza, 45th Floor, Suite 4515
New York, New York 10119
Telephone:  212-613-2000
Facsimile:   212-554-9660


Attorneys for Defendants and Appellants
QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST
DIAGNOSTICS HOLDINGS, INC., QUEST DIAGNOSTIC INCORPORATED

# TABLE OF CONTENTS

**Page**

**United States Constitution**

U.S. Const. Article III, § 2, cl. 1 .................................................................1

**Federal Statutes**

42 U.S.C. § 12182 ...........................................................................................2

**Federal Regulations**

28 C.F.R. § 36.303 ...........................................................................................6

28 C.F.R. § 36.406 .........................................................................................12

28 C.F.R. pt. 36, § 36.303, App. C at 963 ...............................................17

36 C.F.R. pt. 1191, App. D at 235, reprinted at 69 Fed. Reg. 44083,
   44386 (July 23, 2004) ..............................................................................18

**Federal Rules of Civil Procedure**

Fed. R. Civ. Proc., Rule 26 .........................................................................20

Fed. R. Civ. Proc., Rule 37 .........................................................................31

Fed. R. Civ. Proc., Rule 82 .........................................................................36

61353557.v2-OGLETREE

(4 of 39), Page 4 of 39    Case: 23-3436, 03/21/2024, DktEntry: 14.2, Page 4 of 39

Section 2, Clause 1. Jurisdiction of Courts [Text & Notes..., USCA CONST Art. III...

United States Code Annotated
    Constitution of the United States
        Annotated
            Article III. The Judiciary

U.S.C.A. Const. Art. III § 2, cl. 1

Section 2, Clause 1. Jurisdiction of Courts [Text & Notes of Decisions subdivisions I to VII]

Currentness

<Notes of Decisions for Constitution Art. III, § 2, cl. 1, Jurisdiction of Courts, are displayed in multiple documents.>

**Section 2.** The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;--to all Cases affecting Ambassadors, other public Ministers and Consuls;--to all Cases of admiralty and maritime Jurisdiction;--to Controversies to which the United States shall be a Party;--to Controversies between two or more States;--between a State and Citizens of another State;--between Citizens of different States;--between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.

U.S.C.A. Const. Art. III § 2, cl. 1, USCA CONST Art. III § 2, cl. 1
Current through P.L. 118-41. Some statute sections may be more current, see credits for details.

**End of Document**                                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

ADDENDUM P.1

United States Code Annotated

Title 42. The Public Health and Welfare

Chapter 126. Equal Opportunity for Individuals with Disabilities (Refs & Annos)

Subchapter III. Public Accommodations and Services Operated by Private Entities (Refs & Annos)

42 U.S.C.A. § 12182

§ 12182. Prohibition of discrimination by public accommodations

Currentness

**(a) General rule**

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

**(b) Construction**

**(1) General prohibition**

**(A) Activities**

**(i) Denial of participation**

It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

**(ii) Participation in unequal benefit**

It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals.

**(iii) Separate benefit**

It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such

ADDENDUM P.2

action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others.

**(iv) Individual or class of individuals**

For purposes of clauses (i) through (iii) of this subparagraph, the term "individual or class of individuals" refers to the clients or customers of the covered public accommodation that enters into the contractual, licensing or other arrangement.

**(B) Integrated settings**

Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual.

**(C) Opportunity to participate**

Notwithstanding the existence of separate or different programs or activities provided in accordance with this section, an individual with a disability shall not be denied the opportunity to participate in such programs or activities that are not separate or different.

**(D) Administrative methods**

An individual or entity shall not, directly or through contractual or other arrangements, utilize standards or criteria or methods of administration--

**(i)** that have the effect of discriminating on the basis of disability; or

**(ii)** that perpetuate the discrimination of others who are subject to common administrative control.

**(E) Association**

It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.

**(2) Specific prohibitions**

**(A) Discrimination**

For purposes of subsection (a), discrimination includes--

**(i)** the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges,

ADDENDUM P.3

advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;

**(ii)** a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

**(iii)** a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden;

**(iv)** a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, and transportation barriers in existing vehicles and rail passenger cars used by an establishment for transporting individuals (not including barriers that can only be removed through the retrofitting of vehicles or rail passenger cars by the installation of a hydraulic or other lift), where such removal is readily achievable; and

**(v)** where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable.

### (B) Fixed route system

#### (i) Accessibility

It shall be considered discrimination for a private entity which operates a fixed route system and which is not subject to section 12184 of this title to purchase or lease a vehicle with a seating capacity in excess of 16 passengers (including the driver) for use on such system, for which a solicitation is made after the 30th day following the effective date of this subparagraph, that is not readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.

#### (ii) Equivalent service

If a private entity which operates a fixed route system and which is not subject to section 12184 of this title purchases or leases a vehicle with a seating capacity of 16 passengers or less (including the driver) for use on such system after the effective date of this subparagraph that is not readily accessible to or usable by individuals with disabilities, it shall be considered discrimination for such entity to fail to operate such system so that, when viewed in its entirety, such system ensures a level of service to individuals with disabilities, including individuals who use wheelchairs, equivalent to the level of service provided to individuals without disabilities.

### (C) Demand responsive system

ADDENDUM P.4

For purposes of subsection (a), discrimination includes--

(i) a failure of a private entity which operates a demand responsive system and which is not subject to section 12184 of this title to operate such system so that, when viewed in its entirety, such system ensures a level of service to individuals with disabilities, including individuals who use wheelchairs, equivalent to the level of service provided to individuals without disabilities; and

(ii) the purchase or lease by such entity for use on such system of a vehicle with a seating capacity in excess of 16 passengers (including the driver), for which solicitations are made after the 30th day following the effective date of this subparagraph, that is not readily accessible to and usable by individuals with disabilities (including individuals who use wheelchairs) unless such entity can demonstrate that such system, when viewed in its entirety, provides a level of service to individuals with disabilities equivalent to that provided to individuals without disabilities.

**(D) Over-the-road buses**

**(i) Limitation on applicability**

Subparagraphs (B) and (C) do not apply to over-the-road buses.

**(ii) Accessibility requirements**

For purposes of subsection (a), discrimination includes (I) the purchase or lease of an over-the-road bus which does not comply with the regulations issued under section 12186(a)(2) of this title by a private entity which provides transportation of individuals and which is not primarily engaged in the business of transporting people, and (II) any other failure of such entity to comply with such regulations.

**(3) Specific construction**

Nothing in this subchapter shall require an entity to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of such entity where such individual poses a direct threat to the health or safety of others. The term "direct threat" means a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services.

**CREDIT(S)**

(Pub.L. 101-336, Title III, § 302, July 26, 1990, 104 Stat. 355.)

42 U.S.C.A. § 12182, 42 USCA § 12182
Current through P.L. 118-41. Some statute sections may be more current, see credits for details.

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

ADDENDUM P.5

Code of Federal Regulations

Title 28. Judicial Administration

Chapter I. Department of Justice

Part 36. Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities (Refs & Annos)

Subpart C. Specific Requirements

28 C.F.R. § 36.303

§ 36.303 Auxiliary aids and services.

Effective: January 17, 2017

Currentness

(a) General. A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense.

(b) Examples. The term "auxiliary aids and services" includes—

(1) Qualified interpreters on-site or through video remote interpreting (VRI) services; notetakers; real-time computer-aided transcription services; written materials; exchange of written notes; telephone handset amplifiers; assistive listening devices; assistive listening systems; telephones compatible with hearing aids; closed caption decoders; open and closed captioning, including real-time captioning; voice, text, and video-based telecommunications products and systems, including text telephones (TTYs), videophones, and captioned telephones, or equally effective telecommunications devices; videotext displays; accessible electronic and information technology; or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing;

(2) Qualified readers; taped texts; audio recordings; Brailled materials and displays; screen reader software; magnification software; optical readers; secondary auditory programs (SAP); large print materials; accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision;

(3) Acquisition or modification of equipment or devices; and

(4) Other similar services and actions.

(c) Effective communication.

ADDENDUM P.6

§ 36.303 Auxiliary aids and services., 28 C.F.R. § 36.303

(1) A public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. This includes an obligation to provide effective communication to companions who are individuals with disabilities.

(i) For purposes of this section, "companion" means a family member, friend, or associate of an individual seeking access to, or participating in, the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation, who, along with such individual, is an appropriate person with whom the public accommodation should communicate.

(ii) The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place. A public accommodation should consult with individuals with disabilities whenever possible to determine what type of auxiliary aid is needed to ensure effective communication, but the ultimate decision as to what measures to take rests with the public accommodation, provided that the method chosen results in effective communication. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability.

(2) A public accommodation shall not require an individual with a disability to bring another individual to interpret for him or her.

(3) A public accommodation shall not rely on an adult accompanying an individual with a disability to interpret or facilitate communication, except—

(i) In an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available; or

(ii) Where the individual with a disability specifically requests that the accompanying adult interpret or facilitate communication, the accompanying adult agrees to provide such assistance, and reliance on that adult for such assistance is appropriate under the circumstances.

(4) A public accommodation shall not rely on a minor child to interpret or facilitate communication, except in an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available.

(d) Telecommunications.

(1) When a public accommodation uses an automated-attendant system, including, but not limited to, voicemail and messaging, or an interactive voice response system, for receiving and directing incoming telephone calls, that system must provide effective real-time communication with individuals using auxiliary aids and services, including text telephones (TTYs) and all forms of FCC–approved telecommunications relay systems, including Internet-based relay systems.

(2) A public accommodation that offers a customer, client, patient, or participant the opportunity to make outgoing telephone calls using the public accommodation's equipment on more than an incidental convenience basis shall make

ADDENDUM P.7

available accessible public telephones, TTYs, or other telecommunications products and systems for use by an individual who is deaf or hard of hearing, or has a speech impairment.

(3) A public accommodation may use relay services in place of direct telephone communication for receiving or making telephone calls incident to its operations.

(4) A public accommodation shall respond to telephone calls from a telecommunications relay service established under title IV of the ADA in the same manner that it responds to other telephone calls.

(5) This part does not require a public accommodation to use a TTY for receiving or making telephone calls incident to its operations.

(e) Closed caption decoders. Places of lodging that provide televisions in five or more guest rooms and hospitals that provide televisions for patient use shall provide, upon request, a means for decoding captions for use by an individual with impaired hearing.

(f) Video remote interpreting (VRI) services. A public accommodation that chooses to provide qualified interpreters via VRI service shall ensure that it provides—

(1) Real-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication;

(2) A sharply delineated image that is large enough to display the interpreter's face, arms, hands, and fingers, and the participating individual's face, arms, hands, and fingers, regardless of his or her body position;

(3) A clear, audible transmission of voices; and

(4) Adequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI.

(g) Movie theater captioning and audio description—

(1) Definitions. For the purposes of this paragraph (g)—

(i) Analog movie means a movie exhibited in analog film format.

(ii) Audio description means the spoken narration of a movie's key visual elements, such as the action, settings, facial expressions, costumes, and scene changes. Audio description generally requires the use of an audio description device for delivery to a patron.

ADDENDUM P.8

(iii) Audio description device means the individual device that a patron may use at any seat to hear audio description.

(iv) Captioning device means the individual device that a patron may use at any seat to view closed movie captioning.

(v) Closed movie captioning means the written display of a movie's dialogue and non-speech information, such as music, the identity of the character who is speaking, and other sounds or sound effects. Closed movie captioning generally requires the use of a captioning device for delivery of the captions to the patron.

(vi) Digital movie means a movie exhibited in digital cinema format.

(vii) Movie theater means a facility, other than a drive-in theater, that is owned, leased by, leased to, or operated by a public accommodation and that contains one or more auditoriums that are used primarily for the purpose of showing movies to the public for a fee.

(viii) Open movie captioning means the written on-screen display of a movie's dialogue and non-speech information, such as music, the identity of the character who is speaking, and other sounds and sound effects.

(2) General. A public accommodation shall ensure that its movie theater auditoriums provide closed movie captioning and audio description whenever they exhibit a digital movie that is distributed with such features. Application of the requirements of paragraph (g) of this section is deferred for any movie theater auditorium that exhibits analog movies exclusively, but may be addressed in a future rulemaking.

(3) Minimum requirements for captioning devices. A public accommodation shall provide a minimum number of fully operational captioning devices at its movie theaters in accordance with the following Table:

| Number of movie theater auditoriums exhibiting digital movies | Minimum required number of captioning devices |
| --- | --- |
| 1.................................................................................... | 4 |
| 2-7................................................................................. | 6 |
| 8-15................................................................................ | 8 |
| 16 +................................................................................ | 12 |

(4) Minimum requirements for audio description devices.

(i) A public accommodation shall provide at its movie theaters a minimum of one fully operational audio description device for every two movie theater auditoriums exhibiting digital movies and no less than two devices per movie theater. When calculation of the required number of devices results in a fraction, the next greater whole number of devices shall be provided.

ADDENDUM P.9

(ii) A public accommodation may comply with the requirements in paragraph (g)(4)(i) of this section by using the existing assistive listening receivers that the public accommodation is already required to provide at its movie theaters in accordance with Table 219.3 of the 2010 Standards, if those receivers have a minimum of two channels available for sound transmission to patrons.

(5) Performance requirements for captioning devices and audio description devices. Each captioning device and each audio description device must be properly maintained by the movie theater to ensure that each device is fully operational, available to patrons in a timely manner, and easily usable by patrons. Captioning devices must be adjustable so that the captions can be viewed as if they are on or near the movie screen, and must provide clear, sharp images in order to ensure readability of captions.

(6) Alternative technologies.

(i) A public accommodation may meet its obligation to provide captioning and audio description in its movie theaters to persons with disabilities through any technology so long as that technology provides communication as effective as that provided to movie patrons without disabilities.

(ii) A public accommodation may use open movie captioning as an alternative to complying with the requirements specified in paragraph (g)(3) of this section, either by providing open movie captioning at all showings of all movies available with captioning, or whenever requested by or for an individual who is deaf or hard of hearing prior to the start of the movie.

(7) Compliance date for providing captioning and audio description.

(i) A public accommodation must comply with the requirements in paragraphs (g)(2)-(6) of this section in its movie theaters that exhibit digital movies by June 2, 2018.

(ii) If a public accommodation converts a movie theater auditorium from an analog projection system to a system that allows it to exhibit digital movies after December 2, 2016, then that auditorium must comply with the requirements in paragraph (g) of this section by December 2, 2018, or within 6 months of that auditorium's complete installation of a digital projection system, whichever is later.

(8) Notice. On or after January 17, 2017, whenever a public accommodation provides captioning and audio description in a movie theater auditorium exhibiting digital movies, it shall ensure that all notices of movie showings and times at the box office and other ticketing locations, on Web sites and mobile apps, in newspapers, and over the telephone, inform potential patrons of the movies or showings that are available with captioning and audio description. This paragraph does not impose any obligation on third parties that provide information about movie theater showings and times, so long as the third party is not part of or subject to the control of the public accommodation.

(9) Operational requirements. On or after January 17, 2017, whenever a public accommodation provides captioning and audio description in a movie theater auditorium exhibiting digital movies, it shall ensure that at least one employee is

ADDENDUM P.10

§ 36.303 Auxiliary aids and services., 28 C.F.R. § 36.303

available at the movie theater to assist patrons seeking or using captioning or audio description whenever a digital movie is exhibited with these features. Such assistance includes the ability to—

(i) Locate all necessary equipment that is stored and quickly activate the equipment and any other ancillary systems required for the use of the captioning devices and audio description devices;

(ii) Operate and address problems with all captioning and audio description equipment prior to and during the movie;

(iii) Turn on open movie captions if the movie theater is relying on open movie captioning to meet the requirements of paragraph (g)(3) of this section; and

(iv) Communicate effectively with individuals with disabilities, including those who are deaf or hard of hearing or who are blind or have low vision, about how to use, operate, and resolve problems with captioning devices and audio description devices.

(10) This section does not require the use of open movie captioning as a means of compliance with paragraph (g) of this section, even if providing closed movie captioning for digital movies would be an undue burden.

(h) Alternatives. If provision of a particular auxiliary aid or service by a public accommodation would result in a fundamental alteration in the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or in an undue burden, i.e., significant difficulty or expense, the public accommodation shall provide an alternative auxiliary aid or service, if one exists, that would not result in an alteration or such burden but would nevertheless ensure that, to the maximum extent possible, individuals with disabilities receive the goods, services, facilities, privileges, advantages, or accommodations offered by the public accommodation.

**Credits**

[Order No. 3181–2010, 75 FR 56253, Sept. 15, 2010; Order No. 3779–2016, 81 FR 87378, Dec. 2, 2016]

SOURCE: 56 FR 35592, July 26, 1991; 58 FR 17522, April 5, 1993; 59 FR 2675, Jan. 18, 1994; 59 FR 17446, April 12, 1994; Order No. 2249–99, 64 FR 47103, Aug. 30, 1999; Order No. 3181–2010, 75 FR 56250, Sept. 15, 2010; Order No. 3702–2016, 81 FR 53240, Aug. 11, 2016; Order No. 3779–2016, 81 FR 87378, Dec. 2, 2016, unless otherwise noted.

AUTHORITY: 5 U.S.C. 301; 28 U.S.C. 509, 510; 42 U.S.C. 12186(b), 12205a.

Notes of Decisions (125)

Current through March 21, 2024, 89 FR 20138. Some sections may be more current. See credits for details.

End of Document                                         © 2024 Thomson Reuters. No claim to original U.S. Government Works.

ADDENDUM P.11

Code of Federal Regulations
Title 28. Judicial Administration
Chapter I. Department of Justice
Part 36. Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities (Refs & Annos)
Subpart D. New Construction and Alterations

28 C.F.R. § 36.406

§ 36.406 Standards for new construction and alterations.

Effective: March 15, 2011
Currentness

(a) Accessibility standards and compliance date.

(1) New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government (or, in those jurisdictions where the government does not certify completion of applications, if the date when the last application for a building permit or permit extension is received by the State, county, or local government) is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010.

(2) New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government (or, in those jurisdictions where the government does not certify completion of applications, if the date when the last application for a building permit or permit extension is received by the State, county, or local government) is on or after September 15, 2010 and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010 and before March 15, 2012.

(3) New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a State, county, or local government (or, in those jurisdictions where the government does not certify completion of applications, if the date when the last application for a building permit or permit extension is received by the State, county, or local government) is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012.

(4) For the purposes of this section, "start of physical construction or alterations" does not mean ceremonial groundbreaking or razing of structures prior to site preparation.

(5) Noncomplying new construction and alterations.

ADDENDUM P.12

§ 36.406 Standards for new construction and alterations., 28 C.F.R. § 36.406

(i) Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, before March 15, 2012, be made accessible in accordance with either the 1991 Standards or the 2010 Standards.

(ii) Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards.

Appendix to § 36.406(a)

| Compliance dates for new construction and alterations | Applicable standards |
| --- | --- |
| On or after January 26, 1993 and before September 15, 2010... | 1991 Standards. |
| On or after September 15, 2010 and before March 15, 2012..... | 1991 Standards or 2010 Standards. |
| On or after March 15, 2012...................................................... | 2010 Standards. |

(b) Scope of coverage. The 1991 Standards and the 2010 Standards apply to fixed or built-in elements of buildings, structures, site improvements, and pedestrian routes or vehicular ways located on a site. Unless specifically stated otherwise, the advisory notes, appendix notes, and figures contained in the 1991 Standards and 2010 Standards explain or illustrate the requirements of the rule; they do not establish enforceable requirements.

(c) Places of lodging. Places of lodging subject to this part shall comply with the provisions of the 2010 Standards applicable to transient lodging, including, but not limited to, the requirements for transient lodging guest rooms in sections 224 and 806 of the 2010 Standards.

(1) Guest rooms. Guest rooms with mobility features in places of lodging subject to the transient lodging requirements of 2010 Standards shall be provided as follows—

(i) Facilities that are subject to the same permit application on a common site that each have 50 or fewer guest rooms may be combined for the purposes of determining the required number of accessible rooms and type of accessible bathing facility in accordance with table 224.2 to section 224.2 of the 2010 Standards.

(ii) Facilities with more than 50 guest rooms shall be treated separately for the purposes of determining the required number of accessible rooms and type of accessible bathing facility in accordance with table 224.2 to section 224.2 of the 2010 Standards.

(2) Exception. Alterations to guest rooms in places of lodging where the guest rooms are not owned or substantially controlled by the entity that owns, leases, or operates the overall facility and the physical features of the guest room interiors are controlled by their individual owners are not required to comply with § 36.402 or the alterations requirements in section 224.1.1 of the 2010 Standards.

ADDENDUM P.13

(3) Facilities with residential dwelling units and transient lodging units. Residential dwelling units that are designed and constructed for residential use exclusively are not subject to the transient lodging standards.

(d) Social service center establishments. Group homes, halfway houses, shelters, or similar social service center establishments that provide either temporary sleeping accommodations or residential dwelling units that are subject to this part shall comply with the provisions of the 2010 Standards applicable to residential facilities, including, but not limited to, the provisions in sections 233 and 809.

(1) In sleeping rooms with more than 25 beds covered by this part, a minimum of 5% of the beds shall have clear floor space complying with section 806.2.3 of the 2010 Standards.

(2) Facilities with more than 50 beds covered by this part that provide common use bathing facilities shall provide at least one roll-in shower with a seat that complies with the relevant provisions of section 608 of the 2010 Standards. Transfer-type showers are not permitted in lieu of a roll-in shower with a seat, and the exceptions in sections 608.3 and 608.4 for residential dwelling units are not permitted. When separate shower facilities are provided for men and for women, at least one roll-in shower shall be provided for each group.

(e) Housing at a place of education. Housing at a place of education that is subject to this part shall comply with the provisions of the 2010 Standards applicable to transient lodging, including, but not limited to, the requirements for transient lodging guest rooms in sections 224 and 806, subject to the following exceptions. For the purposes of the application of this section, the term "sleeping room" is intended to be used interchangeably with the term "guest room" as it is used in the transient lodging standards.

(1) Kitchens within housing units containing accessible sleeping rooms with mobility features (including suites and clustered sleeping rooms) or on floors containing accessible sleeping rooms with mobility features shall provide turning spaces that comply with section 809.2.2 of the 2010 Standards and kitchen work surfaces that comply with section 804.3 of the 2010 Standards.

(2) Multi-bedroom housing units containing accessible sleeping rooms with mobility features shall have an accessible route throughout the unit in accordance with section 809.2 of the 2010 Standards.

(3) Apartments or townhouse facilities that are provided by or on behalf of a place of education, which are leased on a year-round basis exclusively to graduate students or faculty and do not contain any public use or common use areas available for educational programming, are not subject to the transient lodging standards and shall comply with the requirements for residential facilities in sections 233 and 809 of the 2010 Standards.

(f) Assembly areas. Assembly areas that are subject to this part shall comply with the provisions of the 2010 Standards applicable to assembly areas, including, but not limited to, sections 221 and 802. In addition, assembly areas shall ensure that—

(1) In stadiums, arenas, and grandstands, wheelchair spaces and companion seats are dispersed to all levels that include seating served by an accessible route;

ADDENDUM P.14

(2) In assembly areas that are required to horizontally disperse wheelchair spaces and companion seats by section 221.2.3.1 of the 2010 Standards and that have seating encircling, in whole or in part, a field of play or performance, wheelchair spaces and companion seats are dispersed around that field of play or performance area;

(3) Wheelchair spaces and companion seats are not located on (or obstructed by) temporary platforms or other movable structures, except that when an entire seating section is placed on temporary platforms or other movable structures in an area where fixed seating is not provided, in order to increase seating for an event, wheelchair spaces and companion seats may be placed in that section. When wheelchair spaces and companion seats are not required to accommodate persons eligible for those spaces and seats, individual, removable seats may be placed in those spaces and seats;

(4) In stadium-style movie theaters, wheelchair spaces and companion seats are located on a riser or cross-aisle in the stadium section that satisfies at least one of the following criteria—

(i) It is located within the rear 60% of the seats provided in an auditorium; or

(ii) It is located within the area of an auditorium in which the vertical viewing angles (as measured to the top of the screen) are from the 40th to the 100th percentile of vertical viewing angles for all seats as ranked from the seats in the first row (1st percentile) to seats in the back row (100th percentile).

(g) Medical care facilities. Medical care facilities that are subject to this part shall comply with the provisions of the 2010 Standards applicable to medical care facilities, including, but not limited to, sections 223 and 805. In addition, medical care facilities that do not specialize in the treatment of conditions that affect mobility shall disperse the accessible patient bedrooms required by section 223.2.1 of the 2010 Standards in a manner that is proportionate by type of medical specialty.

**Credits**
[Order No. 3181–2010, 75 FR 56256, Sept. 15, 2010]

SOURCE: 56 FR 35592, July 26, 1991; 58 FR 17522, April 5, 1993; 59 FR 2675, Jan. 18, 1994; 59 FR 17446, April 12, 1994; Order No. 2249–99, 64 FR 47103, Aug. 30, 1999; Order No. 3181–2010, 75 FR 56250, Sept. 15, 2010; Order No. 3702–2016, 81 FR 53240, Aug. 11, 2016; Order No. 3779–2016, 81 FR 87378, Dec. 2, 2016, unless otherwise noted.

AUTHORITY: 5 U.S.C. 301; 28 U.S.C. 509, 510; 42 U.S.C. 12186(b), 12205a.

Notes of Decisions (39)

Current through March 21, 2024, 89 FR 20138. Some sections may be more current. See credits for details.

**Department of Justice**                                          **Pt. 36**

*Effect of ADA Amendments Act on Academic
Requirements in Postsecondary Education*

The Department notes that the ADA
Amendments Act revised the rules of con-
struction in title V of the ADA by including
a provision affirming that nothing in the Act
changed the existing ADA requirement that
covered entities provide reasonable modifica-
tions in policies, practices, or procedures un-
less the entity can demonstrate that making
such modifications, including academic re-
quirements in postsecondary education,
would fundamentally alter the nature of
goods, services, facilities, privileges, advan-
tages, or accommodations involved. *See* 42
U.S.C. 12201(f). Congress noted that the ref-
erence to academic requirements in postsec-
ondary education was included "solely to
provide assurances that the bill does not
alter current law with regard to the obliga-
tions of academic institutions under the
ADA, which we believe is already dem-
onstrated in case law on this topic. Specifi-
cally, the reference to academic standards in
post-secondary education is unrelated to the
purpose of this legislation and should be
given no meaning in interpreting the defini-
tion of disability." 154 Cong. Rec. S8843
(daily ed. Sept. 16, 2008) (Statement of the
Managers). Given that Congress did not in-
tend there to be any change to the law in
this area, the Department did not propose to
make any changes to its regulatory require-
ments in response to this provision of the
ADA Amendments Act.

[AG Order 3702–2016, 81 FR 53225, Aug. 11,
2016]

# PART 36—NONDISCRIMINATION ON THE BASIS OF DISABILITY BY PUBLIC ACCOMMODATIONS AND IN COMMERCIAL FACILITIES

## Subpart A—General

Sec.
36.101   Purpose and broad coverage.
36.102   Application.
36.103   Relationship to other laws.
36.104   Definitions.
36.105   Definition of "disability."
36.106–36.199   [Reserved]

## Subpart B—General Requirements

36.201   General.
36.202   Activities.
36.203   Integrated settings.
36.204   Administrative methods.
36.205   Association.
36.206   Retaliation or coercion.
36.207   Places of public accommodations lo-
cated in private residences.
36.208   Direct threat.
36.209   Illegal use of drugs.
36.210   Smoking.
36.211   Maintenance of accessible features.
36.212   Insurance.
36.213   Relationship of subpart B to subparts
C and D of this part.
36.214–36.299   [Reserved]

## Subpart C—Specific Requirements

36.301   Eligibility criteria.
36.302   Modifications in policies, practices,
or procedures.
36.303   Auxiliary aids and services.
36.304   Removal of barriers.
36.305   Alternatives to barrier removal.
36.306   Personal devices and services.
36.307   Accessible or special goods.
36.308   Seating in assembly areas.
36.309   Examinations and courses.
36.310   Transportation provided by public ac-
commodations.
35.311   Mobility devices.
36.312–36.399   [Reserved]

## Subpart D—New Construction and Alterations

36.401   New construction.
36.402   Alterations.
36.403   Alterations: Path of travel.
36.404   Alterations: Elevator exemption.
36.405   Alterations: Historic preservation.
36.406   Standards for new construction and
alterations.
36.407–36.499   [Reserved]

## Subpart E—Enforcement

36.501   Private suits.
36.502   Investigations and compliance re-
views.
36.503   Suit by the Attorney General.
36.504   Relief.
36.505   Attorneys fees.
36.506   Alternative means of dispute resolu-
tion.
36.507   Effect of unavailability of technical
assistance.
36.508   Effective date.
36.509–36.599   [Reserved]

## Subpart F—Certification of State Laws or Local Building Codes

36.601   Definitions.
36.602   General rule.
36.603   Preliminary determination.
36.604   Procedure following preliminary de-
termination of equivalency.
36.605   Procedure following preliminary de-
nial of certification.
36.606   Effect of certification.
36.607   Guidance concerning model codes.

ADDENDUM P.16

**Department of Justice**    **Pt. 36, App. C**

and is meant to include nonverbal sounds and alarms and computer-generated speech.

Several persons and organizations requested that the Department replace the term "telecommunications devices for deaf persons" or "TDD's" with the term "text telephone." The Department has declined to do so. The Department is aware that the Architectural and Transportation Barriers Compliance Board has used the phrase "text telephone" in lieu of the statutory term "TDD" in its final accessibility guidelines. Title IV of the ADA, however, uses the term "Telecommunications Device for the Deaf," and the Department believes it would be inappropriate to abandon this statutory term at this time.

Paragraph (b)(2) lists examples of aids and services for making visually delivered materials accessible to persons with visual impairments. Many commenters proposed additional examples such as signage or mapping, audio description services, secondary auditory programs (SAP), telebraillers, and reading machines. While the Department declines to add these items to the list in the regulation, they may be considered appropriate auxiliary aids and services.

Paragraph (b)(3) refers to the acquisition or modification of equipment or devices. For example, tape players used for an audio-guided tour of a museum exhibit may require the addition of Brailled adhesive labels to the buttons on a reasonable number of the tape players to facilitate their use by individuals who are blind. Similarly, permanent or portable assistive listening systems for persons with hearing impairments may be required at a hotel conference center.

Several commenters suggested the addition of current technological innovations in microelectronics and computerized control systems (e.g., voice recognition systems, automatic dialing telephones, and infrared elevator and light control systems) to the list of auxiliary aids and services. The Department interprets auxiliary aids and services as those aids and services designed to provide effective communications, i. e., making aurally and visually delivered information available to persons with hearing, speech, and vision impairments. Methods of making services, programs, or activities accessible to, or usable by, individuals with mobility or manual dexterity impairments are addressed by other sections of this part, including the requirements for modifications in policies, practices, or procedures (§36.302), the elimination of existing architectural barriers (§36.304), and the provision of alternatives to barriers removal (§36.305).

Paragraph (b)(4) refers to other similar services and actions. Several commenters asked for clarification that "similar services and actions" include retrieving items from shelves, assistance in reaching a marginally accessible seat, pushing a barrier aside in order to provide an accessible route, or assistance in removing a sweater or coat. While retrieving an item from a shelf might be an "auxiliary aid or service" for a blind person who could not locate the item without assistance, it might be a readily achievable alternative to barrier removal for a person using a wheelchair who could not reach the shelf, or a reasonable modification to a self-service policy for an individual who lacked the ability to grasp the item. (Of course, a store would not be required to provide a personal shopper.) As explained above, auxiliary aids and services are those aids and services required to provide effective communications. Other forms of assistance are more appropriately addressed by other provisions of the final rule.

The auxiliary aid requirement is a flexible one. A public accommodation can choose among various alternatives as long as the result is effective communication. For example, a restaurant would not be required to provide menus in Braille for patrons who are blind, if the waiters in the restaurant are made available to read the menu. Similarly, a clothing boutique would not be required to have Brailled price tags if sales personnel provide price information orally upon request; and a bookstore would not be required to make available a sign language interpreter, because effective communication can be conducted by notepad.

A critical determination is what constitutes an effective auxiliary aid or service. The Department's proposed rule recommended that, in determining what auxiliary aid to use, the public accommodation consult with an individual before providing him or her with a particular auxiliary aid or service. This suggestion sparked a significant volume of public comment. Many persons with disabilities, particularly persons who are deaf or hard of hearing, recommended that the rule should require that public accommodations give "primary consideration" to the "expressed choice" of an individual with a disability. These commenters asserted that the proposed rule was inconsistent with congressional intent of the ADA, with the Department's proposed rule implementing title II of the ADA, and with longstanding interpretations of section 504 of the Rehabilitation Act.

Based upon a careful review of the ADA legislative history, the Department believes that Congress did not intend under title III to impose upon a public accommodation the requirement that it give primary consideration to the request of the individual with a disability. To the contrary, the legislative history demonstrates congressional intent to strongly encourage consulting with persons with disabilities. In its analysis of the ADA's auxiliary aids requirement for public accommodations, the House Education and Labor Committee stated that it "expects" that

## ARCHITECTURAL AND TRANSPORTATION BARRIERS COMPLIANCE BOARD

**36 CFR Parts 1190 and 1191**

[Docket No. 99–1]

RIN 3014–AA20

**Americans with Disabilities Act (ADA) Accessibility Guidelines for Buildings and Facilities; Architectural Barriers Act (ABA) Accessibility Guidelines**

**AGENCY:** Architectural and Transportation Barriers Compliance Board.

**ACTION:** Final rule.

**SUMMARY:** The Architectural and Transportation Barriers Compliance Board (Access Board) is revising and updating its accessibility guidelines for buildings and facilities covered by the Americans with Disabilities Act of 1990 (ADA) and the Architectural Barriers Act of 1968 (ABA). These guidelines cover new construction and alterations and serve as the basis for enforceable standards issued by other Federal agencies. The ADA applies to places of public accommodation, commercial facilities, and State and local government facilities. The ABA covers facilities designed, built, altered with Federal funds or leased by Federal agencies. As a result of this revision and update, the guidelines for the ADA and ABA are consolidated in one Code of Federal Regulations part.

**DATES:** The guidelines are effective September 21, 2004. The incorporation by reference of certain publications listed in the guidelines is approved by the Director of the Federal Register as of September 21, 2004.

**FOR FURTHER INFORMATION CONTACT:** Marsha Mazz, Office of Technical and Information Services, Architectural and Transportation Barriers Compliance Board, 1331 F Street, NW., suite 1000, Washington, DC 20004–1111. Telephone numbers (202) 272–0020 (voice); (202) 272–0082 (TTY). These are not toll free numbers. E-mail address: ta@access-board.gov.

**SUPPLEMENTARY INFORMATION:**

**Availability of Copies and Electronic Access**

Single copies of this publication may be obtained at no cost by calling the Access Board's automated publications order line (202) 272–0080, by pressing 2 on the telephone keypad, then 1 and requesting publication S–50 (ADA and ABA Accessibility Guidelines Final Rule). Please record your name, address, telephone number and publication code.

Persons using a TTY should call (202) 272–0082. This document is available in alternate formats upon request. Persons who want a publication in an alternate format should specify the type of format (cassette tape, braille, large print, or ASCII disk). This document is also available on the Board's Web site (*http://www.access-board.gov*).

**Statutory Background**

The Access Board is responsible for developing and maintaining accessibility guidelines for the construction and alteration of facilities covered by the Americans with Disabilities Act (ADA) of 1990.[1] The Board holds a similar responsibility under the Architectural Barriers Act (ABA) of 1968.[2] The Board's guidelines provide a minimum baseline for other Federal departments responsible for issuing enforceable standards.

The ADA recognizes and protects the civil rights of people with disabilities and is modeled after earlier landmark laws prohibiting discrimination on the basis of race and gender. To ensure that buildings and facilities are accessible to and usable by people with disabilities, the ADA establishes accessibility requirements for State and local government facilities under title II and places of public accommodation and commercial facilities under title III. The law requires that the Board issue minimum guidelines to assist the Department of Justice (DOJ) and the Department of Transportation (DOT) in establishing accessibility standards under these titles. Those standards must be consistent with the Board's guidelines.

The ABA requires access to facilities designed, built, altered, or leased with Federal funds. Similar to its responsibility under the ADA, the Board is charged with developing and maintaining minimum guidelines for accessible facilities that serve as the basis for enforceable standards issued by four standard-setting agencies. The standard-setting agencies are the Department of Defense (DOD), the General Services Administration (GSA), the Department of Housing and Urban Development (HUD), and the U.S. Postal Service (USPS).

Each Federal department responsible for standards based on the Board's guidelines under the ADA or the ABA is represented on the Board. These departments have been closely involved in the development of this rule. Through this process, the Board and the standard-setting agencies coordinated extensively to minimize any differences between the Board's guidelines and their eventual updated standards.

**Rulemaking History**

*ADA Accessibility Guidelines*

On July 26, 1991, one year after the ADA was signed into law, the Board published the ADA Accessibility Guidelines (ADAAG).[3] The Board supplemented ADAAG to include additional requirements specific to transportation facilities on September 6, 1991.[4] The Department of Justice (DOJ) and the Department of Transportation (DOT) incorporated ADAAG into their ADA implementing regulations, thus making ADAAG the enforceable standard under titles II and III of the ADA.[5]

In developing the original ADAAG, the Board identified subjects for further rulemaking based on information it received through public comments. Some addressed areas that had not been specifically covered by an access standard or code before. The Board initiated a long-term agenda of rulemaking a year after ADAAG was first published. It proceeded with this agenda independently from its update of the original document. On separate tracks, the Board developed ADAAG supplements covering:

• State and local government facilities (1998)[6]
• building elements designed for children's use (1998)[7]
• play areas (2000)[8]
• recreation facilities (2002)[9]

These supplementary guidelines have not yet been adopted by the DOJ as enforceable standards under the ADA.

In 1994, the Board initiated an effort to update the original ADAAG by establishing an advisory committee to thoroughly review the document and to recommend changes. The ADAAG Review Advisory Committee consisted of 22 members representing the design and construction industry, the building codes community, State and local government entities, and people with disabilities.[10] The committee was

---

[1] 42 U.S.C. 12101 *et seq.*
[2] 42 U.S.C. 4151 *et seq.*

[3] 56 FR 35408, 36 CFR Part 1191.
[4] 56 FR 45500.
[5] 56 FR 35544, 28 CFR Part 36 (DOJ's ADA regulation implementing title III); 56 FR 45584, 49 CFR Parts 37 and 38 (DOT's ADA regulation implementing titles II and III).
[6] 63 FR 2000 (January 13, 1998).
[7] 63 FR 2060 (January 13, 1998).
[8] 65 FR 62498 (October 18, 2000).
[9] 67 FR 56352 (September 3, 2002).
[10] The American Council of the Blind, the American Institute of Architects, the American Society of Interior Designers, the Arc, Builders Hardware Manufacturers Association, Building Officials and Code Administrators International,

TECHNICAL                                                      CHAPTER 7: COMMUNICATION ELEMENTS AND FEATURES

**706.3 Receiver Hearing-Aid Compatibility.** Receivers required to be hearing-aid compatible shall interface with telecoils in hearing aids through the provision of neckloops.

> **Advisory 706.3 Receiver Hearing-Aid Compatibility.** Neckloops and headsets that can be worn as neckloops are compatible with hearing aids. Receivers that are not compatible include earbuds, which may require removal of hearing aids, earphones, and headsets that must be worn over the ear, which can create disruptive interference in the transmission and can be uncomfortable for people wearing hearing aids.

**706.4 Sound Pressure Level.** *Assistive listening systems* shall be capable of providing a sound pressure level of 110 dB minimum and 118 dB maximum with a dynamic range on the volume control of 50 dB.

**706.5 Signal-to-Noise Ratio.** The signal-to-noise ratio for internally generated noise in *assistive listening systems* shall be 18 dB minimum.

**706.6 Peak Clipping Level.** Peak clipping shall not exceed 18 dB of clipping relative to the peaks of speech.

**707 Automatic Teller Machines and Fare Machines**

> **Advisory 707 Automatic Teller Machines and Fare Machines.** Interactive transaction machines (ITMs), other than ATMs, are not covered by Section 707. However, for entities covered by the ADA, the Department of Justice regulations that implement the ADA provide additional guidance regarding the relationship between these requirements and elements that are not directly addressed by these requirements. Federal procurement law requires that ITMs purchased by the Federal government comply with standards issued by the Access Board under Section 508 of the Rehabilitation Act of 1973, as amended. This law covers a variety of products, including computer hardware and software, websites, phone systems, fax machines, copiers, and similar technologies. For more information on Section 508 consult the Access Board's website at www.access-board.gov.

**707.1 General.** Automatic teller machines and fare machines shall comply with 707.

> **Advisory 707.1 General.** If farecards have one tactually distinctive corner they can be inserted with greater accuracy. Token collection devices that are designed to accommodate tokens which are perforated can allow a person to distinguish more readily between tokens and common coins. Place accessible gates and fare vending machines in close proximity to other accessible elements when feasible so the facility is easier to use.

**707.2 Clear Floor or Ground Space.** A clear floor or ground *space* complying with 305 shall be provided.
    **EXCEPTION:** Clear floor or ground *space* shall not be required at drive-up only automatic teller machines and fare machines.

**235**

ADDENDUM P.19

United States Code Annotated
  Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
    Title V. Disclosures and Discovery (Refs & Annos)

Federal Rules of Civil Procedure Rule 26

Rule 26. Duty to Disclose; General Provisions Governing Discovery [Rule Text & Notes of Decisions subdivisions I, II]

Currentness

<Notes of Decisions for 28 USCA Federal Rules of Civil Procedure Rule 26 are displayed in multiple documents. >

**(a) Required Disclosures.**

**(1)** *Initial Disclosure.*

**(A)** *In General.* Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:

**(i)** the name and, if known, the address and telephone number of each individual likely to have discoverable information-- along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

**(ii)** a copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

**(iii)** a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

**(iv)** for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

**(B)** *Proceedings Exempt from Initial Disclosure.* The following proceedings are exempt from initial disclosure:

**(i)** an action for review on an administrative record;

ADDENDUM P.20

**(ii)** a forfeiture action in rem arising from a federal statute;

**(iii)** a petition for habeas corpus or any other proceeding to challenge a criminal conviction or sentence;

**(iv)** an action brought without an attorney by a person in the custody of the United States, a state, or a state subdivision;

**(v)** an action to enforce or quash an administrative summons or subpoena;

**(vi)** an action by the United States to recover benefit payments;

**(vii)** an action by the United States to collect on a student loan guaranteed by the United States;

**(viii)** a proceeding ancillary to a proceeding in another court; and

**(ix)** an action to enforce an arbitration award.

**(C)** *Time for Initial Disclosures--In General.* A party must make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate in this action and states the objection in the proposed discovery plan. In ruling on the objection, the court must determine what disclosures, if any, are to be made and must set the time for disclosure.

**(D)** *Time for Initial Disclosures--For Parties Served or Joined Later.* A party that is first served or otherwise joined after the Rule 26(f) conference must make the initial disclosures within 30 days after being served or joined, unless a different time is set by stipulation or court order.

**(E)** *Basis for Initial Disclosure; Unacceptable Excuses.* A party must make its initial disclosures based on the information then reasonably available to it. A party is not excused from making its disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures.

**(2) *Disclosure of Expert Testimony.***

**(A)** *In General.* In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

**(B)** *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially

ADDENDUM P.21

employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

**(i)** a complete statement of all opinions the witness will express and the basis and reasons for them;

**(ii)** the facts or data considered by the witness in forming them;

**(iii)** any exhibits that will be used to summarize or support them;

**(iv)** the witness's qualifications, including a list of all publications authored in the previous 10 years;

**(v)** a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

**(vi)** a statement of the compensation to be paid for the study and testimony in the case.

**(C)** *Witnesses Who Do Not Provide a Written Report*. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

**(i)** the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

**(ii)** a summary of the facts and opinions to which the witness is expected to testify.

**(D)** *Time to Disclose Expert Testimony*. A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:

**(i)** at least 90 days before the date set for trial or for the case to be ready for trial; or

**(ii)** if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

**(E)** *Supplementing the Disclosure*. The parties must supplement these disclosures when required under Rule 26(e).

**(3)** *Pretrial Disclosures.*

**(A)** *In General*. In addition to the disclosures required by Rule 26(a)(1) and (2), a party must provide to the other parties and promptly file the following information about the evidence that it may present at trial other than solely for impeachment:

ADDENDUM P.22

**(i)** the name and, if not previously provided, the address and telephone number of each witness--separately identifying those the party expects to present and those it may call if the need arises;

**(ii)** the designation of those witnesses whose testimony the party expects to present by deposition and, if not taken stenographically, a transcript of the pertinent parts of the deposition; and

**(iii)** an identification of each document or other exhibit, including summaries of other evidence--separately identifying those items the party expects to offer and those it may offer if the need arises.

**(B)** *Time for Pretrial Disclosures; Objections.* Unless the court orders otherwise, these disclosures must be made at least 30 days before trial. Within 14 days after they are made, unless the court sets a different time, a party may serve and promptly file a list of the following objections: any objections to the use under Rule 32(a) of a deposition designated by another party under Rule 26(a)(3)(A)(ii); and any objection, together with the grounds for it, that may be made to the admissibility of materials identified under Rule 26(a)(3)(A)(iii). An objection not so made--except for one under Federal Rule of Evidence 402 or 403--is waived unless excused by the court for good cause.

**(4)** *Form of Disclosures.* Unless the court orders otherwise, all disclosures under Rule 26(a) must be in writing, signed, and served.

**(b) Discovery Scope and Limits.**

**(1)** *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

**(2)** *Limitations on Frequency and Extent.*

**(A)** *When Permitted.* By order, the court may alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30. By order or local rule, the court may also limit the number of requests under Rule 36.

**(B)** *Specific Limitations on Electronically Stored Information.* A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

ADDENDUM P.23

**(C)** *When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

**(i)** the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

**(ii)** the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

**(iii)** the proposed discovery is outside the scope permitted by Rule 26(b)(1).

**(3)** *Trial Preparation: Materials.*

**(A)** *Documents and Tangible Things.* Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

**(i)** they are otherwise discoverable under Rule 26(b)(1); and

**(ii)** the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

**(B)** *Protection Against Disclosure.* If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

**(C)** *Previous Statement.* Any party or other person may, on request and without the required showing, obtain the person's own previous statement about the action or its subject matter. If the request is refused, the person may move for a court order, and Rule 37(a)(5) applies to the award of expenses. A previous statement is either:

**(i)** a written statement that the person has signed or otherwise adopted or approved; or

**(ii)** a contemporaneous stenographic, mechanical, electrical, or other recording--or a transcription of it--that recites substantially verbatim the person's oral statement.

**(4)** *Trial Preparation: Experts.*

**(A)** *Deposition of an Expert Who May Testify.* A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.

ADDENDUM P.24

**(B)** *Trial-Preparation Protection for Draft Reports or Disclosures*. Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.

**(C)** *Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses*. Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:

**(i)** relate to compensation for the expert's study or testimony;

**(ii)** identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

**(iii)** identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

**(D)** *Expert Employed Only for Trial Preparation*. Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only:

**(i)** as provided in Rule 35(b); or

**(ii)** on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

**(E)** *Payment*. Unless manifest injustice would result, the court must require that the party seeking discovery:

**(i)** pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D); and

**(ii)** for discovery under (D), also pay the other party a fair portion of the fees and expenses it reasonably incurred in obtaining the expert's facts and opinions.

**(5)** *Claiming Privilege or Protecting Trial-Preparation Materials.*

**(A)** *Information Withheld*. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

**(i)** expressly make the claim; and

ADDENDUM P.25

**(ii)** describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

**(B)** *Information Produced.* If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved.

## (c) Protective Orders.

**(1)** *In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending -- or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

**(A)** forbidding the disclosure or discovery;

**(B)** specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;

**(C)** prescribing a discovery method other than the one selected by the party seeking discovery;

**(D)** forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

**(E)** designating the persons who may be present while the discovery is conducted;

**(F)** requiring that a deposition be sealed and opened only on court order;

**(G)** requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

**(H)** requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

**(2)** *Ordering Discovery.* If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery.

ADDENDUM P.26

**(3)** *Awarding Expenses.* Rule 37(a)(5) applies to the award of expenses.

**(d) Timing and Sequence of Discovery.**

**(1)** *Timing.* A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order.

**(2)** *Early* **Rule 34** *Requests.*

**(A) Time to Deliver.** More than 21 days after the summons and complaint are served on a party, a request under Rule 34 may be delivered:

**(i)** to that party by any other party, and

**(ii)** by that party to any plaintiff or to any other party that has been served.

**(B) When Considered Served.** The request is considered to have been served at the first Rule 26(f) conference.

**(3)** *Sequence.* Unless the parties stipulate or the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice:

**(A)** methods of discovery may be used in any sequence; and

**(B)** discovery by one party does not require any other party to delay its discovery.

**(e) Supplementing Disclosures and Responses.**

**(1)** *In General.* A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:

**(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

**(B)** as ordered by the court.

ADDENDUM P.27

**(2)** *Expert Witness.* For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

**(f) Conference of the Parties; Planning for Discovery.**

**(1)** *Conference Timing.* Except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B) or when the court orders otherwise, the parties must confer as soon as practicable--and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b).

**(2)** *Conference Content; Parties' Responsibilities.* In conferring, the parties must consider the nature and basis of their claims and defenses and the possibilities for promptly settling or resolving the case; make or arrange for the disclosures required by Rule 26(a)(1); discuss any issues about preserving discoverable information; and develop a proposed discovery plan. The attorneys of record and all unrepresented parties that have appeared in the case are jointly responsible for arranging the conference, for attempting in good faith to agree on the proposed discovery plan, and for submitting to the court within 14 days after the conference a written report outlining the plan. The court may order the parties or attorneys to attend the conference in person.

**(3)** *Discovery Plan.* A discovery plan must state the parties' views and proposals on:

**(A)** what changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made;

**(B)** the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues;

**(C)** any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced;

**(D)** any issues about claims of privilege or of protection as trial-preparation materials, including -- if the parties agree on a procedure to assert these claims after production -- whether to ask the court to include their agreement in an order under Federal Rule of Evidence 502;

**(E)** what changes should be made in the limitations on discovery imposed under these rules or by local rule, and what other limitations should be imposed; and

**(F)** any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c).

**(4)** *Expedited Schedule.* If necessary to comply with its expedited schedule for Rule 16(b) conferences, a court may by local rule:

ADDENDUM P.28

**(A)** require the parties' conference to occur less than 21 days before the scheduling conference is held or a scheduling order is due under Rule 16(b); and

**(B)** require the written report outlining the discovery plan to be filed less than 14 days after the parties' conference, or excuse the parties from submitting a written report and permit them to report orally on their discovery plan at the Rule 16(b) conference.

**(g) Signing Disclosures and Discovery Requests, Responses, and Objections.**

**(1)** *Signature Required; Effect of Signature.* Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name--or by the party personally, if unrepresented--and must state the signer's address, e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:

**(A)** with respect to a disclosure, it is complete and correct as of the time it is made; and

**(B)** with respect to a discovery request, response, or objection, it is:

**(i)** consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;

**(ii)** not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

**(iii)** neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

**(2)** *Failure to Sign.* Other parties have no duty to act on an unsigned disclosure, request, response, or objection until it is signed, and the court must strike it unless a signature is promptly supplied after the omission is called to the attorney's or party's attention.

**(3)** *Sanction for Improper Certification.* If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

**CREDIT(S)**

(Amended December 27, 1946, effective March 19, 1948; January 21, 1963, effective July 1, 1963; February 28, 1966, effective July 1, 1966; March 30, 1970, effective July 1, 1970; April 29, 1980, effective August 1, 1980; April 28, 1983, effective August 1, 1983; March 2, 1987, effective August 1, 1987; April 22, 1993, effective December 1, 1993; April 17, 2000, effective December 1, 2000; April 12, 2006, effective December 1, 2006; April 30, 2007, effective December 1, 2007; April 28, 2010, effective December 1, 2010; April 29, 2015, effective December 1, 2015.)

ADDENDUM P.29

Fed. Rules Civ. Proc. Rule 26, 28 U.S.C.A., FRCP Rule 26
Including Amendments Received Through 3-1-24

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

ADDENDUM P.30

United States Code Annotated
  Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
    Title V. Disclosures and Discovery (Refs & Annos)

Federal Rules of Civil Procedure Rule 37

Rule 37. Failure to Make Disclosures or to Cooperate in Discovery; Sanctions

Currentness

**(a) Motion for an Order Compelling Disclosure or Discovery.**

**(1) *In General.*** On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

**(2) *Appropriate Court.*** A motion for an order to a party must be made in the court where the action is pending. A motion for an order to a nonparty must be made in the court where the discovery is or will be taken.

**(3) *Specific Motions.***

**(A)** *To Compel Disclosure.* If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions.

**(B)** *To Compel a Discovery Response.* A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:

**(i)** a deponent fails to answer a question asked under Rule 30 or 31;

**(ii)** a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4);

**(iii)** a party fails to answer an interrogatory submitted under Rule 33; or

**(iv)** a party fails to produce documents or fails to respond that inspection will be permitted -- or fails to permit inspection -- as requested under Rule 34.

**(C)** *Related to a Deposition.* When taking an oral deposition, the party asking a question may complete or adjourn the examination before moving for an order.

ADDENDUM P.31

**(4) *Evasive or Incomplete Disclosure, Answer, or Response.*** For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.

**(5) *Payment of Expenses; Protective Orders.***

**(A)** *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).* If the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

**(i)** the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

**(ii)** the opposing party's nondisclosure, response, or objection was substantially justified; or

**(iii)** other circumstances make an award of expenses unjust.

**(B)** *If the Motion Is Denied.* If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

**(C)** *If the Motion Is Granted in Part and Denied in Part.* If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.

**(b) Failure to Comply with a Court Order.**

**(1) *Sanctions Sought in the District Where the Deposition Is Taken.*** If the court where the discovery is taken orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of court. If a deposition-related motion is transferred to the court where the action is pending, and that court orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of either the court where the discovery is taken or the court where the action is pending.

**(2) *Sanctions Sought in the District Where the Action Is Pending.***

**(A)** *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

ADDENDUM P.32

**(i)** directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

**(ii)** prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

**(iii)** striking pleadings in whole or in part;

**(iv)** staying further proceedings until the order is obeyed;

**(v)** dismissing the action or proceeding in whole or in part;

**(vi)** rendering a default judgment against the disobedient party; or

**(vii)** treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

**(B)** *For Not Producing a Person for Examination.* If a party fails to comply with an order under Rule 35(a) requiring it to produce another person for examination, the court may issue any of the orders listed in Rule 37(b)(2)(A)(i)-(vi), unless the disobedient party shows that it cannot produce the other person.

**(C)** *Payment of Expenses.* Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

**(c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.**

**(1)** *Failure to Disclose or Supplement.* If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

**(A)** may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

**(B)** may inform the jury of the party's failure; and

**(C)** may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

ADDENDUM P.33

**(2)** *Failure to Admit.* If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless:

**(A)** the request was held objectionable under Rule 36(a);

**(B)** the admission sought was of no substantial importance;

**(C)** the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or

**(D)** there was other good reason for the failure to admit.

**(d) Party's Failure to Attend Its Own Deposition, Serve Answers to Interrogatories, or Respond to a Request for Inspection.**

**(1)** *In General.*

**(A)** *Motion; Grounds for Sanctions.* The court where the action is pending may, on motion, order sanctions if:

**(i)** a party or a party's officer, director, or managing agent--or a person designated under Rule 30(b)(6) or 31(a)(4)--fails, after being served with proper notice, to appear for that person's deposition; or

**(ii)** a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response.

**(B)** *Certification.* A motion for sanctions for failing to answer or respond must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action.

**(2)** *Unacceptable Excuse for Failing to Act.* A failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c).

**(3)** *Types of Sanctions.* Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

ADDENDUM P.34

**(e) Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

**(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

**(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

**(A)** presume that the lost information was unfavorable to the party;

**(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or

**(C)** dismiss the action or enter a default judgment.

**(f) Failure to Participate in Framing a Discovery Plan.** If a party or its attorney fails to participate in good faith in developing and submitting a proposed discovery plan as required by Rule 26(f), the court may, after giving an opportunity to be heard, require that party or attorney to pay to any other party the reasonable expenses, including attorney's fees, caused by the failure.

**CREDIT(S)**

(Amended December 29, 1948, effective October 20, 1949; March 30, 1970, effective July 1, 1970; April 29, 1980, effective August 1, 1980; amended by Pub.L. 96-481, Title II, § 205(a), October 21, 1980, 94 Stat. 2330, effective October 1, 1981; amended March 2, 1987, effective August 1, 1987; April 22, 1993, effective December 1, 1993; April 17, 2000, effective December 1, 2000; April 12, 2006, effective December 1, 2006; April 30, 2007, effective December 1, 2007; April 16, 2013, effective December 1, 2013; April 29, 2015, effective December 1, 2015.)

Fed. Rules Civ. Proc. Rule 37, 28 U.S.C.A., FRCP Rule 37
Including Amendments Received Through 3-1-24

**End of Document**                                                                          © 2024 Thomson Reuters. No claim to original U.S. Government Works.

ADDENDUM P.35

United States Code Annotated
   Federal Rules of Civil Procedure for the United States District Courts (Refs & Annos)
     Title XI. General Provisions

Federal Rules of Civil Procedure Rule 82

Rule 82. Jurisdiction and Venue Unaffected

Currentness

These rules do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts. An admiralty or maritime claim under Rule 9(h) is governed by 28 U.S.C. § 1390.

**CREDIT(S)**

(Amended December 29, 1948, effective October 20, 1949; February 28, 1966, effective July 1, 1966; April 23, 2001, effective December 1, 2001; April 30, 2007, effective December 1, 2007; April 28, 2016, effective December 1, 2016.)

Fed. Rules Civ. Proc. Rule 82, 28 U.S.C.A., FRCP Rule 82
Including Amendments Received Through 3-1-24

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

ADDENDUM P.36