Nos. 23-3189 & 23-3436

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

JULIAN VARGAS, individually on behalf of themselves and all others similarly situated and AMERICAN COUNCIL OF THE BLIND,
*Plaintiffs-Appellees / Cross-Appellants*,

v.

QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., QUEST DIAGNOSTICS HOLDINGS, INC., and QUEST DIAGNOSTICS INCORPORATED,
*Defendants-Appellants / Cross-Appellees*.

Appeal from an Order of the United States District Court
for the Central District of California
Case No. 2:19-cv-08108 DMG (MRWx)
The Honorable Dolly M. Gee

## FOURTH BRIEF ON CROSS-APPEAL

**NYE, STIRLING, HALE, MILLER & SWEET, LLP**

Jonathan D. Miller
Alison M. Bernal
Jordan T. Porter
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345
Facsimile: (805) 284-9590
jonathan@nshmlaw.com
alison@nshmlaw.com

Benjamin J. Sweet
101 Pennsylvania Boulevard, Suite 2
Pittsburgh, PA 15228
Telephone: (412) 857-5352
ben@nshmlaw.com

**HANDLEY FARAH & ANDERSON PLLC**
Matthew K. Handley
1201 Connecticut Avenue, NW, Suite 200K
Washington, D.C. 20036
Telephone: (202) 559-2411
mhandley@hfajustice.com

*Attorneys for Plaintiffs-Appellees/Cross-Appellants*

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................1

ARGUMENT .......................................................................................6

I. THE DISTRICT COURT ERRED IN LIMITING INJUNCTIVE RELIEF BY IMPROPERLY RELYING ON INADMISSIBLE TESTIMONY AND PROPOSED REGULATIONS ......................................................................6

    A. The District Court Improperly Relied on Walsh's Testimony to Limit the Scope of Relief Recommended by Plaintiffs' Expert, Dr. Montgomery ........7

        1. Walsh's "rebuttal" testimony concerned matters discussed in Dr. Montgomery's 2021 expert report, and 2022 trial declaration and trial testimony ...............................................................................8

        2. Walsh testified over objection as an undisclosed witness on Quest's undue burden and fundamental alteration defenses .............................9

        3. The District Court erred in allowing Walsh's percipient witness testimony because Walsh testified as both a non-retained, percipient expert witness, and later as a retained expert witness, subject to disclosures pursuant Rule 26(a)(2)(B) & (C) ...................................10

    B. The District Court Erred as a Matter of Law by Refusing to Exclude Walsh's Undisclosed Expert Testimony as Required by Rule 37(c)(1)........13

    C. The Court Further Erred in Relying on Yet-To-Be-Adopted Proposed Kiosk Regulations........................................................................14

    D. The District Court's Errors were Not Harmless ........................................15

II. THE DISTRICT COURT'S ORDER DECLINING TO CERTIFY THE RULE 23(B)(3) UNRUH ACT MINIMUM STATUTORY DAMAGES CLASS FOR THE PRE-TFS TIME PERIOD SHOULD BE REVERSED.................................16

    A. The District Court Erred in Concluding Plaintiffs Did Not Demonstrate Predominance by Failing to Acknowledge Quest's Kiosk Rollout Schedule ........................................................................................17

1. The Determination of Whether a Class Member is Legally Blind Cannot Defeat Certification ..................................................21

2. Class Members Established an Injury Under the Unruh Act ..........22

B. The District Court's Superiority Analysis Fails .......................27

CONCLUSION ..........................................................................28

<u>**TABLE OF AUTHORITIES**</u>

<u>**Cases**</u>

*Arroyo v. Rosas*
    19 F.4th 1202, 1214 (9th Cir. 2021). ...................................................23

*Barranco v. 3D Sys. Corp.*
    952 F.3d 1122, 1127 (9th Cir. 2020) ..............................................7,15

*Boyd v. City & County of San Francisco*
    576 F.3d 938, 949 (9th Cir. 2009) ...................................................7,15

*Briseno v. ConAgra Foods, Inc.*
    844 F.3d 1121, 1131 (9th Cir. 2017) ........................................... 19,22

*Cantu v. United States*
    2015 WL 12743881, at *4 (C.D. Cal. Apr. 6, 2015) ...........................11

*Copart, Inc. v. Sparta Consulting, Inc.*
    2018 WL 1871414, at *20 (E.D. Cal. Apr. 19, 2018). ........................11

*Davis v. Laboratory Corp. of Am. Holdings*
    604 F. Supp. 3d 913, 933 (C.D. Cal. 2022). ................................. passim

*Downey v. Bob's Disc. Furniture Holdings, Inc.*
    633 F. 3d 729, 734 ..........................................................................11

*Fortune v. City of Lomita*
    766 F.3d 1098, 1102 (9th Cir. 2014) .................................................15

*Ollier v. Sweetwater Union High Sch. Dist.*
    768 F.3d 843, 863 (9th Cir. 2014) .....................................................16

*Sidibe v. Sutter Health*
    103 F.4th 675, 692 (9th Cir. 2024) ....................................................15

*Smith v. Helzer*
    95 F. 4th 1207, 1213-14 (9th Cir. 2024)..........................................6,14

*Tedori v. United States*
  211 F.3d 488, 492 (9th Cir. 2000) ..........................................................................14

*White v. Square, Inc.*
  7 Cal. 5th 1019, 1027 (2019). ...............................................................................23

*Wong v. Regents of Univ. of Calif.*
  410 F.3d 1052, 1062 (9th Cir. 2005) .....................................................................16

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*
  259 F.3d 1101, 1106 (9th Cir. 2001). ...................................................... 1,13,15

**<u>Statutes</u>**

FRCP Rule 26 .................................................................................... passim

FRCP Rule 23 .................................................................................... passim

FRCP Rule 37 .................................................................................... passim

California Civil Code § 51 .................................................................23

## **INTRODUCTION**

This cross-appeal arises from two simple premises, both of which stem from the District Court's misapplication of the Federal Rules of Civil Procedure ("FRCP"), Federal Rules of Evidence ("FRE"), and this Court's prior interpretation of these rules.

First, FRCP Rule 26 mandates timely disclosure of witnesses to support a parties' affirmative defenses. Rule 37 adds "teeth" to Rule 26 by requiring exclusion of evidence at trial that is not properly disclosed. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

Where, as here, the District Court permitted Cross-Appellees Quest Diagnostics ("Quest" or "Defendant") to call its Vice President of IT Strategy and Digital Transformation, Thomas Walsh ("Walsh"), to testify in support of its affirmative undue burden and fundamental alteration defenses without prior and proper Rule 26 designation, the District Court's decision is reversible error.

Quest called Mr. Walsh to counter the scope of the injunction sought by Cross-Appellants Julian Vargas, Luke Davis, and the American Council of the Blind ("Plaintiffs" or "Cross-Appellants") and supported by their properly disclosed expert, Dr. Rachael Montgomery. It is undisputed Cross-Appellants timely objected to the Walsh testimony and properly moved to strike it. It is further undisputed that the District Court relied on Walsh's trial testimony to support Quest's affirmative

defenses and limit the scope of the injunction sought by Cross-Appellants. Had Quest timely and properly disclosed Walsh, Cross-Appellants could have sought further discovery to disprove his trial assertions and demonstrated the requested injunction would not have imposed an undue burden or fundamental alteration upon Defendant. Cross-Appellants were instead ambushed at trial and subsequently prejudiced by the District Court's reliance on the Walsh testimony to limit Cross-Appellants' requested injunction which would have required Quest to make its patient service center kiosks accessible to the legally blind.

Second, FRCP Rule 23(b)(3) permits class certification where, among other requirements, questions of law or fact common to class members predominate over any questions affecting only individual members. Here, the District Court erred in concluding that predominance could not be established because no "proxy" exists for determining what individuals were harmed by Quest's discriminatory conduct. The District Court failed to consider evidence of Quest's kiosk rollout schedule which provides the very "proxy" the District Court claimed was lacking, as this Court recently affirmed in *LabCorp.* ("As the district court found, 'identifying class members would not be difficult' because 'Labcorp knows how many patients checked in, and has information on those patients from their provided ID and insurance.'").

///

2

Third, Quest effectively concedes that the District Court erred in finding that the Unruh Act's minimum statutory damages of $4,000 per violation provided sufficient incentive to render thousands of individual actions superior to one class action. Third Br. At 54.; *see also LabCorp*, 2024 WL 489288, at *2 n.2 (quoting *Wolin*, 617 F.3d at 1175) ("Though LabCorp also argues that the $4,000 damages amount available under the Unruh Act is significant enough to weigh against superiority under Rule 23(b)(3), such concerns are typically adjudicated under the Rule 23(a) factors. But, even if we were to consider LabCorp's argument, we agree with the district court that the $4,000 statutory damage amount is a minimal sum that 'would be dwarfed by the cost of litigating on an individual basis in this case, given the complexity of the litigation.'").

Quest's arguments in response to Plaintiffs' cross-appeal are entirely premised on recasting Plaintiffs' arguments and thereafter responding only to those strawman arguments without ever directly addressing the issues raised in Plaintiffs' cross-appeal.

Contrary to Quest's assertions, there is no dispute that the District Court has broad discretion on the order of proof as it relates to Walsh's testimony and Plaintiffs never contend otherwise. It was Quest, however, that decided not to offer evidence in its affirmative case (prior to rebuttal) to meet its burden to establish its affirmative defenses of undue burden and fundamental alteration. It was also Quest—and not

the District Court—who chose: (1) to call Walsh in *rebuttal* on the points Quest needed to raise to support its *affirmative* defenses, (2) *not* to designate Walsh as a witness in discovery responses as a Rule 30(b)(6) witness, or in its Rule 26 disclosures as a percipient fact witness who was offered in response to these affirmative defenses (2-SER-512–563; 2-SER-471–479), (3) *not* to take any action prior to trial to update its Rule 26 disclosures to correct this deficiency and put Plaintiffs on notice that Walsh would be called to offer testimony on undue burden and fundamental alteration, and (4) to withdraw its liability expert, Steve Sawczyn, who was initially designated to testify in opposition to Dr. Montgomery yet was withdrawn by Quest at trial without explanation.

The District Court committed prejudicial error and abused its discretion when it allowed Walsh to testify at all. The District Court further committed additional error and abused its discretion by relying on Walsh's undisclosed and inadmissible testimony to find that Plaintiffs' requested injunctive relief posed an undue administrative burden on Quest. Similarly, the District Court's reliance upon the Department of Justice's Advanced Notice of Proposed Rulemaking (the "ANPRM") in finding that "requiring Quest to revamp its Kiosks twice in a relatively short period would constitute an undue administrative burden," also constituted prejudicial error given that the proposed rulemaking has never been enacted into

formal regulation and is highly unlikely to ever be so enacted in the future. 1-ER-28.

In addition, mindful of this case's striking factual similarity to the *LabCorp* matter, Quest's opposition misrepresents the reasons why the District Court (erroneously) here declined to certify a Rule 23(b)(3) Unruh Act minimum statutory damages class. Quest does so to avoid certification of the Rule 23(b)(3) minimum statutory damages class the Ninth Circuit previously unanimously upheld in *LabCorp*. Quest's misdirection should not distract this Court from the pertinent facts demanding reversal of the District Court's Rule 23(b)(3) certification order: (1) just like the kiosk at issue in *LabCorp*, the kiosk Quest deployed throughout is diagnostic centers here was identically inaccessible in the 2016-2020 timeframe; (2) the District Court has *already found* that individualized inquiries concerning whether effective communication was offered to class members in the 2016-2020 timeframe do not predominate over common issues; (3) the kiosk rollout schedule that identified where the kiosks were located, when they were deployed, and which patient locations were impacted was entered into evidence at trial without any objection from Quest; and (4) the detailed rollout schedule provides the "proxy" for determining an individual's membership in the Unruh Act minimum statutory damages class.

///

5

For the reasons set forth in the Second Brief on Cross-Appeal and herein, Plaintiffs request that this Court: (1) remand to the District Court to reconsider the scope of its injunctive relief and (2) reverse the District Court's denial of Plaintiffs' motion to certify the Rule 23(b)(3) minimum statutory damages class and remand with instructions to reconsider its superiority and predominance analyses.

## **ARGUMENT**

### I.    THE DISTRICT COURT ERRED IN LIMITING INJUNCTIVE RELIEF BY IMPROPERLY RELYING ON INADMISSIBLE TESTIMONY AND PROPOSED REGULATIONS

The District Court committed clear error and abused its discretion because it failed to "'employ the appropriate legal standards [,]'" and "misapprehend[ed] the law" with respect to Rule 26(a), Rule 26(e)(1) Rule 26(e)(2), and Rule 37(c)(1) when it permitted Walsh's trial testimony. *Smith v. Helzer*, 95 F. 4th 1207, 1213-14 (9th Cir. 2024). The error was compounded when the District Court "'rest[ed] its decision ... on  a clearly erroneous finding of fact' " by adopting Walsh's testimony in rebuttal to Dr. Montgomery's expert opinion as factual grounds to limit the scope of injunctive relief. *Ibid*.

Quest admits the District Court "considered Walsh rebuttal testimony and ANPRM" in its "determination in favor of Quest on its undue burden and fundamental alteration defenses." Third Br. at 31. As this Court has previously held, "when error is established, [the Court] must presume prejudice unless it is more

probable than not that the error did not materially affect the verdict." *Barranco v. 3D Sys. Corp.*, 952 F.3d 1122, 1127 (9th Cir. 2020) (quoting *Boyd v. City & County of San Francisco*, 576 F.3d 938, 949 (9th Cir. 2009)). As set forth below, Quest has failed to meet its burden to overcome the presumption of prejudice. Rather, Cross-Appellants were clearly prejudiced by the District Court's reliance on Walsh's testimony to limit the proposed injunction.

### A. The District Court Improperly Relied on Walsh's Testimony to Limit the Scope of Relief Recommended by Plaintiffs' Expert, Dr. Montgomery

Quest first argues the District Court's determination as to the scope of the injunctive relief was derived from its determination that TFS provided effective communication. *See* Third Br. at 31. This is incorrect. The Court repeatedly relied on Walsh's testimony to limit the scope of the injunctive relief recommended by Plaintiffs' expert, Dr. Montgomery. Specifically, in the District's Court's Findings of Fact and Conclusions of Law following trial it held that:

> Quest identified several potential logistical obstacles to Dr. Montgomery's recommendations. For example, Dr. Montgomery testified that a hole could be manually drilled into the existing enclosure to allow for access to the iPad's headphone jack. Day 3 Tr. at 118:1–3. But Walsh testified that doing so would void Quest's warranty for the product. Day 4 Tr. at 57:20–24. Walsh also testified that adding a keyboard and potentially headphones would necessarily add new, breakable parts, which, unlike the iPad, would not be securely housed in an enclosure. Walsh Decl. ¶ 7(a). Moreover, the existing Kiosks have only one data port, and Quest needs that port to attach the camera needed to scan insurance cards. *Id.* at ¶ 7(b). Quest does not expect to be able to continue to use the internal headphone jack because of its

7

understanding that both Apple and Android expect to phase out their headphone jacks over time.  *Id*. at ¶ 7(c).

Finally, Quest emphasizes the high administrative burden of installing new physical equipment to the Kiosks.  This would require training technicians in the installation and use of the equipment, and would necessitate new training for PSC staff.  Walsh Decl. ¶ 7(d).  Because the rollout would take years to effectuate, Quest staff would be required to monitor and maintain two parallel systems until the rollout was completed.  *Id*. at ¶ 7(f).  Quest would have to rewrite its software as well as update hardware.  Day 2 Tr. at 47:1553:21.

The Court's identification of "several potential logistical obstacles to Dr. Montgomery's recommendations" and the "high administrative burden of installing new physical equipment to the Kiosks" each rely solely on Walsh's testimony—not from a purported determination that TFS provided effective communication. For these reasons, Quest's assertion that the District Court reached its decision on any basis other than Walsh's testimony is not correct.

1. Walsh's "rebuttal" testimony concerned matters discussed in Dr. Montgomery's 2021 expert report, and 2022 trial declaration and trial testimony

Quest further claims the "precise and only purpose of Walsh's rebuttal testimony was . . . to address new assertions and issues that emerged *for the first time* in the re-direct examination" of Dr. Montgomery, claiming she offered the opinions for the first time on the third day of trial that Quest could drill holes into existing tablet housings to access the headphone jack, and provide an interim software solution, a so-called two-step "stop gap" process rendering Kiosks more

accessible pending replacement. Third Br. at 36 (emphasis in original). Quest is, again, simply incorrect.

Dr. Montgomery's recommendations on both "steps" are entirely consistent with her September 2021 expert report, October 2022 trial declaration, and November 2022 trial testimony. *See* 2-SER-391 (Export report statement that "the kiosks did not have a headphone jack,"); and 1-SER-033-034; 1-SER-395-396 (explaining the need for new software to improve accessibility and usability of built-in iPad accessibility features); FER 250:5-16 (Dr. Montgomery trial declaration); FER 109:24-111:23 (testifying within her existing recommendations). The District Court admitted Dr. Montgomery's trial declaration in its entirety over objection. 1-SER-21-22.[1] However, by relying on Walsh's undisclosed and inadmissible testimony to limit the scope of the injunctive relief recommended by Dr. Montgomery, the District Court erred by adopting a clearly erroneous finding of fact. *Smith v. Helzer*, 95 F. 4th at 1213-14.

2. <u>Walsh testified over objection as an undisclosed witness on Quest's undue burden and fundamental alteration defenses</u>

Because Quest never identified Walsh as an expert in the area of undue administrative burden before trial, his trial testimony and declaration, which were solely relied upon by the District Court in limiting injunctive relief, were

---

[1] The specific issue of absence of drilled headphone holes in a kiosk enclosure emerged during Walsh's testimony on the second day of trial. FER 173:17-22.

inadmissible – whether characterized as percipient, percipient expert, or retained expert testimony. Quest never disclosed Walsh as a witness on either defense prior to the close of fact discovery on August 27, 2021. 2-SER-580-582. Nor did Quest disclose Walsh as an expert. *Id.* Plaintiffs first learned of Walsh's designation as a witness for these defenses when Quest filed his trial declaration *two weeks before trial. Indeed, Quest's citations to support its arguments are to both Walsh's Trial Declaration (2-ER-169-171) and his trial testimony (FER-138-139), over Plaintiffs' written and oral objections.* FER 171:19-22; FER 175:21-176:1, FER 179:9-22, PFER004-PFER005.Quest does not (because it cannot) direct this Court to its discovery responses, its Rule 26 disclosures, or its expert disclosures to support its claim -- *because it did not disclose Walsh in any of them.*

3. <u>The District Court erred in allowing Walsh's percipient witness testimony because Walsh testified as both a non-retained, percipient expert witness, and later as a retained expert witness, subject to disclosures pursuant Rule 26(a)(2)(B) & (C)</u>

Under FRE 701(a) and (c), Walsh is only a lay witness if he has personal knowledge, and his testimony is not based on technical or specialized knowledge. However, Walsh's opinions as expressed at paragraph 7 of his trial declaration and at trial are not based on his personal perceptions, but rather based on technical, specialized knowledge, to hypothetically opine about undue *future* administrative burdens Quest *may* experience if Dr. Montgomery's proposed solutions were in fact

adopted by the District Court. As such, Walsh was testifying as an expert pursuant to FRE 702 and 703.

A witness can be a "percipient expert" where "the witness's testimony is restricted to expert opinions rendered in the normal course of their work duties." *Copart, Inc. v. Sparta Consulting, Inc.*, 2018 WL 1871414, at *20 (E.D. Cal. Apr. 19, 2018). Opinions of percipient experts are often referred to as "historical opinions," *i.e.,* what they already know from their job; percipient experts, however, may not offer "a current opinion for the purposes of litigation." *Id.* "[I]n contrast, where 'the witness's testimony relies on information beyond his or her percipient knowledge, the witness is treated as a retained expert.'" *Cantu v. United States*, 2015 WL 12743881, at *4 (C.D. Cal. Apr. 6, 2015). A witness can be a "hybrid" percipient expert and retained expert. *Cantu*, 2015 WL 12743881 at *4.

Accordingly, Quest was required to disclose the substance of Walsh's testimony during the expert disclosure period, whether acting as a non-retained, percipient expert witness, or as a retained expert witness. F.R.C.P. Rule 26(a)(2)(B) or (C); *see, e.g. Downey v. Bob's Disc. Furniture Holdings, Inc.*, 633 F. 3d 729, 734 (non-retained expert opinion testimony arises from ground-level involvement in the events giving rise to the litigation). But Quest made no such disclosure.

That Walsh offered improper opinions solely for the purpose of this litigation is plain from the face of his trial declaration. Walsh's experience and specialized

11

knowledge, and lack of personal knowledge, is set forth in paragraphs 1-6 of his declaration. 2 ER 168:3-169:21. Walsh admits that Quest "had not considered these modifications and additions to the Kiosks until after the litigation commenced." 2 ER 169:26-170:4; 4 ER 511:9-14.  Plaintiffs objected to paragraph 7 of Walsh's trial declaration as improper, undisclosed testimony on Quest's affirmative defenses of undue administrative burden and fundamental alteration but were overruled by the District Court without explanation immediately before Walsh testified at trial. PFER003-PFER015.

Moreover, during his trial testimony, Walsh admitted his opinions concerning undue burden were based on his specialized knowledge, had never been analyzed by Quest prior to trial, relied on information provided by other Quest employees, and were not based on his personal knowledge.[2] FER 139:15-16, fer 26:3-12, 17-18; fer 26:22-28:25. Plaintiffs renewed their objections several times before, during, and immediately after Walsh's testimony on the second and fourth days of trial. *See*, FER 171:1-22, FER 175:21-55:2; FER 179:9-10, FER 6:9-FER7:16, FER 11:3-7, FER 34:19-21. The District Court's stated rationale was Walsh could "testify as to his personal knowledge" (FER 171:21-22), that Walsh was not testifying as an expert (FER 175:21-55:2), and that the District Court was "not taking it as expert

---

[2] "Q Mr. Walsh, you are not an accessibility expert, correct? A I'm not an accessibility expert, correct." FER 26:17-18. FER 139:15-16, FER 26:3-12, 17-18; FER 26:22-28:25.]

testimony about the technicalities of what is being proposed, and that Walsh was testifying as a percipient witness." FER 179:16-22, FER 7:17-18.  The District Court was incorrect and erred by allowing Walsh to testify absent his prior disclosure as mandated by Rule 26.

### B.    The District Court Erred as a Matter of Law by Refusing to Exclude Walsh's Undisclosed Expert Testimony as Required by Rule 37(c)(1)

Both Federal Rule of Civil Procedure 26 and the Central District's Local Rule 16 establish parties' disclosure obligations and demands parties make their disclosures in the sequence ordered by the court. *See* Fed. R. Civ. P. 26(a)(1)(D); C.D. Cal. L.R. 162.4 & 2.5 (requiring parties to disclose witnesses, including expert witness, to be called at trial, other than those contemplated to be used solely for impeachment, and requiring parties to "discuss the status of expert witness designations, expert witnesses, and any issues concerning experts" at the Final Pretrial Conference). "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed," *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (emphasis added), which providing in relevant part:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

As set forth above, Quest has not established it disclosed Walsh prior to the close of fact discovery or expert discovery. Accordingly, the Court failed to employ the appropriate legal standards and erred as matter of law when it permitted Walsh's testimony. *Smith v. Helzer*, 95 F. 4th at 1213-14.

## C.     The Court Further Erred in Relying on Yet-To-Be-Adopted Proposed Kiosk Regulations

Unable to dispute the well-established rule that "proposed regulations carry no more weight than a position advanced on brief," *Tedori v. United States*, 211 F.3d 488, 492 (9th Cir. 2000), Quest instead argues the District Court "in no way 'deferred' to the ANPRM or even gave it significant weight," with regard to Quest's undue burden defense, claiming it was "clearly an afterthought in [the court's] analysis." Third Br. at 39. Quest's argument ignores the District Court's express statement acknowledging that the ANPRM was central to its finding:

> Under the particular circumstances of this case, the Court concludes that requiring the modifications requested by Plaintiffs at this time would impose an undue administrative burden on Quest. ***In particular, given the proposed rulemaking currently pending***, requiring Quest to revamp its Kiosks twice in a relatively short period would constitute an undue administrative burden, given the time and energy required to roll out the Kiosks and to make the modifications that have been made in the intervening years.

1-ER-28 (emphasis added). In fact, absent the court's reliance on the ANPRM's proposed regulations, Quest presented *no other evidence* to support a finding that requiring Quest to implement the requested modifications would constitute an undue

14

burden. In the absence of regulations, this Court's "precedent is clear that, 'as a general matter, the lack of specific regulations cannot eliminate a statutory obligation.'" *Robles*, 913 F.3d at 908–909 (quoting *Fortune v. City of Lomita*, 766 F.3d 1098, 1102 (9th Cir. 2014)). The fact that the ANPRM has not progressed into formally enacted regulations in the more than 13 months since the District Court issued its judgment underscores the magnitude of its error in this regard.

### D.    The District Court's Errors were Not Harmless

Because the District Court erred by failing to apply Rule 37(c)(1)'s "self-executing" and "automatic" exclusionary sanction, the burden shifts to Quest "to demonstrate that the error was harmless." *Sidibe v. Sutter Health*, 103 F.4th 675, 692 (9th Cir. 2024); *Yeti*, 259 F.3d at 1107 ("Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness."). Where, as here, error is established, this court "must presume prejudice unless it is more probable than not that the error did not materially affect the verdict." *Barranco v. 3D Sys. Corp.*, 952 F.3d 1122, 1127 (9th Cir. 2020 (quoting *Boyd v. City & Cty. of San Francisco*, 576 F.3d 938, 949 (9th Cir. 2009)).

The District Court's erroneous admission of Walsh's testimony was both an error at law, leading to an erroneous finding of fact, and not harmless. *See, e.g.*, *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 863 (9th Cir. 2014) (late disclosures were "not harmless," as had the "witnesses been allowed to testify at

15

trial. . . . The last thing a party or its counsel wants in a hotly contested lawsuit is to make last-minute preparations and decisions on the run"); *Wong v. Regents of Univ. of Calif.*, 410 F.3d 1052, 1062 (9th Cir. 2005) (delay and gamesmanship do not warrant further delay, even if the Court could accommodate rescheduling; interference with a trial schedule is not harmless).

Such error is presumptively prejudicial, and Quest has not met its burden to overcome this presumption, nor could it. The District Court relied solely on Walsh's testimony to limit the scope of the injunction. In the absence of Walsh's testimony, Quest offered no testimony that would have otherwise supported the limited scope of the injunction that Plaintiffs' expert, Dr. Montgomery, identified was necessary to ensure effective communication to class members.

## II. THE DISTRICT COURT'S ORDER DECLINING TO CERTIFY THE RULE 23(B)(3) UNRUH ACT MINIMUM STATUTORY DAMAGES CLASS FOR THE PRE-TFS TIME PERIOD SHOULD BE REVERSED

The District Court abused its discretion when denying Plaintiffs' motion to certify a Rule 23(b)(3) Unruh Act minimum statutory damages class—comprised of individuals who Quest discriminated against on the basis of their disability when attempting to access Quest's diagnostic services. *See* Second Br. at 7.

## A. The District Court Erred in Concluding Plaintiffs Did Not Demonstrate Predominance by Failing to Acknowledge Quest's Kiosk Rollout Schedule

When analyzing predominance, the District Court summarized the showing required of each putative class members as follows: "(1) that he or she is legally blind and (2) that he or she visited a patient service center *with* a kiosk and *without* a staffed desk (3) during the class period." 3-ER-400. The Court then found that demonstrating these elements would require an individualized inquiry "[w]ithout at least a proxy for determining class membership to narrow the scope of the individualized inquiry[.]" 3-ER-400 (concluding "individualized issues will predominate over common ones with respect to the California sub-class").

The evidence of Quest's kiosk rollout schedule—admitted into evidence at trial without objection by Quest but wholly ignored by the District Court—provides the very proxy the Court deemed missing. This critical evidence accounts for the disparate rulings on class certification between this case and *LabCorp*—which, as Quest concedes, involved kiosks that were identically inaccessible during the 2016 to 2020 timeframe—and wherein this Court unanimously affirmed certification of a Rule 23(b)(3) California Unruh Act minimum statutory damages class, and unanimously rejected a request to rehear the case, *see Davis v. Laboratory Corp. of Am. Holdings*, 604 F. Supp. 3d 913, 933 (C.D. Cal. 2022), aff'd, No. 22-55873, 2024 WL 489288 (9th Cir. Feb. 8, 2024 ("LabCorp"). Mindful of this case's striking

17

factual similarity to *LabCorp* in the 2016 through 2020 timeframe, Quest resorts to misrepresenting the reasons why the District Court (erroneously) declined to certify a Rule 23(b)(3) Unruh Act minimum statutory damages class here.

First, according to Quest, with regard to the kiosk rollout schedule (which, in addition to being entered into evidence at trial, was first presented to the District Court with the motion for class certification (2-SER-469-470), "the District Court considered and rejected that evidence." Third Br. at 47. This is simply untrue. Nowhere in the District Court's certification order is there any reference whatsoever to the kiosk rollout schedule. *See generally* ER 385–401. Quest's support for this contention relies on the District Court's statement that "the Kiosks were not rolled out uniformly across Quest's network throughout the class period." Third Br. at 47 (quoting 3-ER-400). In fact, the District Court's erroneous finding that the kiosks were not *uniformly* rolled out demonstrates the District Court simply failed to review or consider Quest's kiosk rollout schedule when it performed its predominance analysis. The kiosk rollout schedule *is* the evidence that the inaccessible kiosks were uniformly rolled out and it presents the very proxy for class membership the District Court claimed was lacking in finding against predominance and thus refusing to certify the Rule 23(b)(3) Unruh Act minimum statutory damages class.

Indeed, the District Court's claimed lack of evidence of a uniform rollout is what led it to erroneously conclude that individualized issues precluded certification.

*See* 3-ER-399 ("Issues such as whether a [PSC] had a fully operational kiosk on the date of a putative class member's visit will therefore require individualized inquiries.").

Quest's rollout schedule, however, unequivocally shows the kiosks were uniformly rolled out. The schedule further reveals the date each of the admittedly identical and inaccessible kiosks were placed into each Quest location. There is therefore objective proof of the inaccessible kiosks at any particular time sufficient to allow a claims administrator to evaluate claims objectively. *Briseno v. ConAgra Foods, Inc.,* 844 F.3d 1121, 1131 (9th Cir. 2017) ("Defendants will have similar opportunities to individually challenge the claims of absent class members if and when they file claims for damages. At the claims administration stage, parties have long relied on "claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court" to validate claims.").

In fact, a fair reading of the certification order makes it quite clear that the Court never considered the kiosk rollout schedule at all and, further, that it is *the* key piece of evidence which should have provided the very "proxy" for individuals' membership in the class that the Court claimed was required but missing. *See* 3-ER-400. Because this key evidence was never considered, the District Court found that "[i]ssues such as *whether a patient service center had a fully operational kiosk*

19

*on the date of a putative class member's visit will therefore require individualized inquiries*." 3-ER-399 (emphasis added). Yet the rollout schedule provides the very means to "narrow the scope of the individualized inquiry" disregarded by the District Court. Had the Court properly considered the kiosk rollout schedule—which sets forth the precise date when each PSC first rolled out the inaccessible kiosk—it would have concluded that no such individualized inquiries are required.

Second, Quest then claims—falsely—that the District Court's finding that individualized inquiries predominate over common issues was driven in large part by the question of "whether some patients had access to an auxiliary aid or service that ensure effective communication." Third Br. at 57. This too mispresents the District Court's certification order, which is crystal clear that the question of whether effective communication was provided to legally blind patients in the 2016 to 2020 pre-TFS timeframe would not require it to make individualized inquiries because the Court had already determined that phlebotomist unavailability across the network was part of Quest's plan for the kiosks:

> Moreover, as the Court has noted elsewhere, *individualized issues regarding whether a phlebotomist offered the class member assistance do not predominate* . . . because the Court has already found that the kiosks were designed in part to allow phlebotomists to be unavailable.

ER 399 (emphasis added). Quest's misdirection should not distract this Court from the pertinent facts demanding reversal of the District Court's Rule 23(b)(3) certification order: (1) the Quest kiosk was identically inaccessible in the 2016-2020

20

timeframe—just as the kiosks are in the *LabCorp* matter; (2) the District Court *already found* individualized inquiries—whether effective communication was offered to class members in the 2016-2020 timeframe—do not predominate over common issues; (3) the key evidence of the rollout schedule was entered into evidence in this matter without any objection from Quest; and (4) the rollout schedule provides the "proxy" for determining class members' membership in the class.

### 1. The determination of whether a class member is legally blind cannot defeat certification

The determination of whether a class member is legally blind cannot defeat certification.

In *LabCorp,* the defendant corporation also claimed not to maintain records of its patients' legal blindness, yet this Court unanimously affirmed certification of that Rule 23(b)(3) class. *See LabCorp*, 2024 WL 489288, at *3 ("Though no specific method for identifying class members has been identified, claims administrators, auditing processes, and other techniques may be used to validate claims.").

Quest mischaracterizes Plaintiffs' reliance on *Briseno v. ConAgra Foods, Inc.* 844 F.3d 1121 (9th Cir. 2017) (holding there is no independent feasibility requirement and issues of class member eligibility criteria cannot be the basis for denying certification). Contrary to Quest's characterization, Plaintiffs do not claim that the District Court "based its predominance analysis on the inability to identify

class members," Third Br. at 51, but rather cite *Briseno* for the proposition that class plaintiffs are not required to demonstrate an administratively feasible way to determine class membership at the class certification stage where, as here, the record is clear that there is an effective proxy for determining such class membership at the settlement or post-judgment phases. As explained above, the kiosk rollout schedule entered into evidence at trial yet disregarded by the District Court is that effective proxy. *See* Second Br. at 45 (citing *Briseno*, 844 F.3d at 1131). As such, Plaintiffs do not state nor even imply that claims administrators "solve the predominance problem"—they simply state that where, as here, predominance is established, claims administrators are capable of effectively managing a claims process—which they do routinely in every Rule 23(b)(3) class action settlement.

2. <u>Class Members Established an Injury Under the Unruh Act</u>

Finally, the Court should not be moved by Quest's attempt to impose a new requirement for Unruh Act liability on the certified class. According to Quest, "an ADA violation alone does not establish liability under the Unruh Act." Br. at 48. Rather, according to Quest, the additional element of "injury" is required. Br. at 44–45. Quest is wrong on both the facts and the law; this Court has stated on numerous occasions that a violation of the ADA constitutes a per se violation of the Unruh Act: "Under the plain language of California Civil Code § 51(f), a violation of the ADA is automatically, without more, a violation of the Unruh Act." *Arroyo v.*

*Rosas*, 19 F.4th 1202, 1214 (9th Cir. 2021). Moreover, the concept of "injury" under the Unruh Act is not distinct but is rather encompassed within the Article III standing analysis.

Quest notes that the Unruh Act requires a showing of injury—"that is, some 'invasion of the plaintiff's legally protected interests.' . . . In essence, an individual plaintiff has standing under the Act if he or she has been the victim of the defendant's discriminatory act." Third Br. at 45 (quoting *Angelucci*, 41 Cal. 4th at 175).

The California Supreme Court's decision in *White v. Square, Inc.* ("*White*") rejected Quest's interpretation of what is required under the Unruh Act. 7 Cal. 5th 1019, 1027 (2019). In *White*, the California Supreme Court confirmed that the facts in two cases—*Koire*, "who presented himself for admittance and requested equal treatment (without paying the discriminatory price)," and *Angelucci*, which "involved plaintiffs who presented themselves for admittance and paid the discriminatory price (without requesting equal treatment)"—"were sufficient for standing under the Unruh Civil Rights Act." *Id.* In *White*, the California Supreme Court explained that beyond "acknowledge[ing] that a plaintiff cannot sue for discrimination in the abstract, but must actually suffer the discriminatory conduct. . . . [O]ur opinion in *Angelucci* expressed no view on the irreducible minimum required for standing." *Id.* Accordingly, when deciding whether the plaintiff had standing under the Unruh Act, where the plaintiff "neither paid a fee nor requested

equal treatment before leaving the business establishment," the *White* Court began by "observing that when a person visits a business's website and encounters a discriminatory provision in the business's terms of service, that person has experienced an interaction distinct from merely learning about a business's discriminatory policy or practices secondhand." *Id.*

Such is the case here, where class members *physically visited* Quest's PSCs during the 2016 through 2020 timeframe and encountered discriminatory conditions firsthand. The *White* Court explained, "[i]n general, a person suffers discrimination under the [Unruh] Act when the person presents himself or herself to a business with intent to use its services but encountered an exclusionary policy or practice that prevents him or her from using those services." *Id.* at 1023. Under Quest's theory, the discrimination is not injury, but *White's* analogy to racially segregated drinking fountains and restrooms illustrates the flaws of this very point:

> We made clear that standing under the Unruh Civil Rights Act extends to "persons encountering, as they did in past decades, racially segregated drinking fountains or restroom facilities at an unattended structure" — occasions "when there was no one present to receive and answer a demand for equal treatment." (*Angelucci*, supra, 41 Cal.4th at p. 170, 59 Cal.Rptr.3d 142, 158 P.3d 718.) The Act does not require a black plaintiff in that situation to make use of the blacks-only facility (or make use of the whites-only facility in violation of the segregation policy) in order to have standing. It is sufficient for a plaintiff to "encounter[ ]" (*Angelucci*, at p. 170, 59 Cal.Rptr.3d 142, 158 P.3d 718) an unattended facility with the intent to use it. There is no doubt that such a plaintiff, even if he or she departed without using the facility, could properly claim he or she was "denied [equal] rights" and was "aggrieved by the [discriminatory] conduct." (§ 52, subd. (a), (c).)

24

> **The same rule would apply in the case of a person who visited and intended to patronize an unattended establishment generally open to the public (e.g., a self-serve kiosk) but then encountered a sign prohibiting access on the basis of the person's membership in a protected category.** In such circumstances, the person would not need to violate or attempt to violate the stated exclusionary policy before bringing a claim.

*Id.* at 1028 (emphasis added). In fact, Quest's argument shows why the District Court here erred: "[t]he District Court correctly recognized that Unruh Act liability would not arise simply from a class member entering a Quest PSC with a Kiosk, but only if a class member was actually denied full and equal treatment as a victim of a discriminatory practice—a fact-intensive individualized inquiry at the heart of Unruh Act injury." Third Br. at 45 (citing *Angelucci*, 41 Cal. 4th at 175; *White*, 7 Cal. 5th at 1025; 2-ER-375–76). But the *White* Court expressly rejected this overly narrow view of Unruh Act standing:

> Nor do we find persuasive Square's argument that because White did not sign up, he was not actually subject to Square's terms of service and therefore suffered no actual or personal injury from any alleged discrimination. This contention takes too narrow a view of the harms that the Unruh Civil Rights Act is intended to deter and remedy. White elucidates this point with the following hypothetical: "Suppose an African-American person approaches a brick-and-mortar furniture store, intending to buy a bed, and sees a sign in the window that says, 'We sell on credit. (Black people must pay cash.)' The person declines to enter the store. Does that person have standing? Yes . . . . And if this person instead goes to the store's website with exactly the same intent, faces exactly the same restriction, and declines to agree to the discriminatory term . . . , there is no reason why the result should differ. Square would require this plaintiff to enter the bricks-and-mortar store, enter into a contractual relationship with the owner, and then endure the further humiliation of denial of credit — or to sign up on the

25

defendant's website and face the same rebuff when she later asks for credit. Neither the deterrent nor the compensatory purposes of the Unruh Act would be served by such requirements. Indeed, both would be undermined."

Square further contends that if a plaintiff has not signed up for its services, then in order to have standing "the plaintiff must show that the defendant applied its discriminatory policy on a particular occasion to prevent him personally from becoming a patron in the first place." **But an individual who intends to take a drink at a shopping mall and leaves upon encountering unattended segregated fountains, like the customer who walks away from the furniture store in White's hypothetical above, has personally experienced the application of a discriminatory policy.** Similarly here, White alleges he was effectively refused service by Square upon visiting its website with the intent of subscribing and then encountering its allegedly discriminatory terms of service.

*White*, 7 Cal. 5th at 1030–31 (emphasis added). Moreover, the *White* Court then rejected Square's policy argument that such a view would "radically expand the universe of 'aggrieved' persons" and lead to class actions that include plaintiffs and absent class members "who did not suffer any personal denial of equal rights," noting *Angelucci* rejected a similar argument and explained that it is for the Legislature "to determine whether to alter the statutory elements of proof to afford business establishments protection against abusive private legal actions and settlement tactics." *Id.* at 1031. Accordingly, the *White* Court concluded "a person who visits a business's website with intent to use its services and encounters terms or conditions that exclude the person from full and equal access to its services has

26

standing under the Unruh Civil Rights Act, with no further requirement that the person enter into an agreement or transaction with the business." *Id.* at 1032–33.

The Unruh Act injury at issue here is therefore easily susceptible to class-wide determination and requires no such "fact-intensive individualized inquiry."

## B.     The District Court's Superiority Analysis Fails

Quest concedes as it must that the District Court's finding on Rule 23(b)(3) superiority is directly at odds with this Court's recent holding in *LabCorp*. Here, the District Court found that superiority was lacking for two reasons. First, it cited to its predominance analysis in finding that because individualized inquiries predominate, the class was unmanageable. Second, the District Court held that the $4,000 in minimum statutory damages "plus attorneys' fees available for prevailing plaintiffs renders individual actions a viable alternative to a class action" sufficient to defeat superiority. Both findings are in error.

First, the Court's "manageability" analysis is in error for the reasons explained in the predominance argument above. Second, Quest does not even attempt to refute—thereby conceding—that the District Court's ruling is in direct contrast to this Court's ruling in *LabCorp* and the great bulk of other Ninth Circuit decisions. For the reasons set forth in Plaintiffs' Opening Brief on Cross-Appeal, the District Court's superiority finding should be reversed.

27

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court: (1) remand to the District Court to reconsider the scope of its injunctive relief and (2) reverse the District Court's denial of Plaintiffs' motion to certify the Rule 23(b)(3) Unruh Act minimum statutory damages class and remand with instructions to reconsider its superiority and predominance analyses.

Date: November 12, 2024

By: /s/ *Jordan T. Porter*
**Jordan T. Porter**
**Alison M. Bernal**
**Jonathan D. Miller**
NYE, STIRLING, HALE, MILLER & SWEET, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345
Facsimile: (805) 284-9590
jordan@nshmlaw.com
alison@nshmlaw.com
jonathan@nshmlaw.com

/s/ *Benjamin J. Sweet*
**Benjamin J. Sweet**
NYE, STIRLING, HALE, MILLER & SWEET, LLP
101 Pennsylvania Boulevard, Suite 2
Pittsburgh, PA 15228
Telephone: (412) 857-5350
ben@nshmlaw.com

/s/ *Matthew K. Handley*
**Matthew K. Handley**
HANDLEY FARAH & ANDERSON PLLC

28

1201 Connecticut Avenue, NW
Suite 200K
Washington, DC 20036
Telephone: (202) 559-2411
mhandley@hfajustice.com

*Attorneys for Plaintiffs-Appellees Julian Vargas, American Council of the Blind, and the Certified Class*

29

## <u>CERTIFICATE OF COMPLIANCE</u>

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Numbers**  <u>23-3189 & 23-3436                                    </u>

I am the attorney or self-represented party.

**This brief contains <u>6,745</u> words,** including _____ words manually

counted in any visual images, and excluding the items exempted by FRAP 32(f).

The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[  ] complies with the word limit of Cir. R. 32-1.

[X] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [  ] it is a joint brief submitted by separately represented parties.
    [  ] a party or parties are filing a single brief in response to multiple briefs.
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** <u>/s/ *Jordan T. Porter*          </u>    **Date** <u>November 12, 2024</u>
*(use "s/[typed name]" to sign electronically-filed documents)*

30

## <u>CERTIFICATE OF SERVICE</u>

### UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

### Form 15. Certificate of Service for Electronic Filing

### 9th Cir. Case Number(s): 23-3189 & 23-3436

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**
[X] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**
[ ] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

FOURTH BRIEF ON CROSS-APPEAL

**Signature**   */s/Lindsey LeBlanc*          **Date**   November 12, 2024

31